UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      v.                              Case No. 2022-cr-20563-JJCG–APP
                                           Honorable Jonathan J.C. Grey

D-3 JUAN BAYOLO, M.D.
_____/

**DR. JUAN BAYOLO'S POST FIRST SUPERSEDING INDICTMENT MOTION
TO EXCLUDE DR. BAYOLO'S PATIENTS RECORDS AND OTHER
ELECTRONIC MEDICAL RECORDS BASED ON EVIDENCE OF
TAMPERING, FRAUD AND UNRELIABILITY**

DR. JUAN BAYOLO, by and through his undersigned counsel, and pursuant to *Fed.
R. Evid.* 803(6)(A)-(E) and 902(11), respectfully requests that this Court enter an order
precluding the government from admitting at trial or using in any way, unreliable patient
records and other Electronic Medical Records that, as set out herein, were tampered with and
changed without Dr. Bayolo's knowledge or authorization and contain false information, and
as such do not fall under the business record exception to the rule against hearsay cabined
in the Federal Rules of Evidence.

**A HEARING ON THIS MMOTION IS REQUESTED.** At present a hearing on
currently pending motions is scheduled for July 30, 2024 at 10:00 a.m. *See* Re-Notice of In
Person Hearing (Doc. 150). The Court had previously set a deadline of June 28, 2024 for the
filing of any additional motions. *See,* Stipulation to Continue, *Etc*. and Order Continuing,
*Etc*. (Doc. 125). It is respectfully requested that this motion be heard during the July 30,
2024, or at a hearing held before the trial currently scheduled for October 1, 2024.

## MEMORANDUM OF LAW

### Facts of Case

On October 27, 2022, Dr. Bayolo and the co-defendants were all charged by way of a grand jury indictment with one count of conspiring to possess with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Indictment (Doc. 1).  On December 14, 2023, the First Superseding Indictment was returned by a grand jury making several changes and adding various substantive charges related to the same conspiracy charged in the Original Indictment (Doc. 120).  Essentially, the defendants are charged with allegedly conspiring to illegally sell prescription drugs for cash payments at medical clinics located in the Metropolitan Detroit area, by knowingly and intentionally disbursing prescriptions for controlled narcotics purportedly outside the course of legitimate medical practice and allegedly for no legitimate medical purpose, and also for allegedly selling controlled narcotic pills without prescriptions. *See,* First Superseding Indictment (Doc. 120 at pp. 1-4, paragraphs 1-4, 7, 9).  Dr. Bayolo, who at all times material to the charges alleged in the indictment lived and worked in Central Florida, only saw patients for approximately six months via video and, or by telephone during telemedicine video and telephone appointments, was initially only paid $125 an hour and then $50 a patient for his telemedicine services at these clinics, made a pittance compared to the amount of fraud and the value of the alleged illegal controlled substances sold alleged in the First Superceding Indictment, see Exhibit 1 - Pie Chart Showing Dr. Bayolo's Earnings Practicing Telemedicine at the Michigan Practice, and ultimately terminated his relationship with the

2

clinics when he did become suspicious that false prescriptions were being written, and reported his concerns to the Drug Enforcement Administration. Dr. Bayolo denies that he willfully, knowingly, and intentionally participated in any conspiracy or scheme to improperly prescribe controlled substances to any patient or anyone as alleged in the indictment, or willfully, knowingly, and intentionally authorized anyone to prescribe any controlled substances in an unauthorized manner.

### *Tampering and Fraud Related to the Patient Records*

During the review of the patient and prescription records provided during discovery, and records and information obtained through independent investigation, it became clear that many of the Electronic Medical Records[1] had been tampered with and altered without Dr. Bayolo's knowledge or authorization. The patient records contain wrongful statements and misrepresentations of personal medical conditions and past medication histories, contain fake medical imaging reports such as X-rays, MRIs, and MAPS records showing previous opiate usage, and evidence prescriptions being written using Dr. Bayolo's credentials without his knowledge or atomization. *See,* Exhibit 2- Summary Practice Fusion and MD Toolbox[2] Tampering and Unlawful Use of Dr. Bayolo's DEA and NPI Numbers; Exhibit 3 - Calendars of Time Dr. Bayolo Practicing Telemedicine Part-Time As Charged in the First Superseding Indictment Showing Days worked and "Unauthorized Prescriptions Not Written By Dr.

---

[1]There are also an unknown number of written prescriptions, that as far as the undersigned are aware, were not written or authorized by Dr. Bayolo.

[2]Practice Fusion and MD Toolbox are Electronic Medical Records (EMR) platforms used to maintain patient records and to prescribe controlled substances by physicians.

Bayolo form 2/26/21 to 7/9/21; Exhibit 4- Fraudulent Prescribing Reported to MD Toolbox. Furthermore, there is a video recording of the government's confidential informants acting as putative patients being coached by individuals, both charged and not charged, who worked at the clinics, explaining how to talk to the doctors, specifically Dr. Bayolo, about their purported medical conditions to get the most desirable opiates instead of the lowest levels of opiates available, and how to *"swindle the doctors"* to get them to prescribe higher dosage opiates. *See* Exhibit 5 - Video Recording April 16, 2021 ID 5 0054.010, patient F.C. with Recruiter Talking with B.K. and K.G. After Unsuccessful Appointment with Dr. Bayolo (B.K. and K.G. Coaching Government's Confidential Informants Pretending to Be Putative Patients Seeking Illegal Prescriptions for Opioids - Explaining How to "*Swindle the doctors"* at at 15:21 "coaching" and 16:19 "swindle doctors") [Disk with Video Filed Separately Under SEAL]. Query: If Dr. Bayolo is a co-conspirator, why would other conspirators need to "swindle" him to obtain illegal prescriptions, the very object of the conspiracy?[3]  Put simply, many of the patient, prescription and other Electronic Medical Records are not reliable, no custodian of records will be able to truthfully swear otherwise, and as such, the patient and other Electronic Medical Records are not admissible as business records pursuant to Rule 902(11) and Rule 803(6)(E) (Allowing for admissibility of business records *if* "the

---

[3]It is respectfully submitted that this evidence of medical records tampering and coaching patients to "swindle the doctors" makes the necessity and urgency of a full pretrial *Enright* hearing all the more clear. *See,* Dr. Juan Bayolo's Supplemental Post First Superseding Indictment Motion in Limine Requesting That Court Exclude Evidence and Testimony Containing Alleged Co-Conspirator Statements as Inadmissible Hearsay and Request For Pretrial *Enright* Hearing and Other Relief (Doc. 144).

opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.").[4]

### *Admissibility of Business Records*

It is anticipated that the government will attempt to introduce voluminous patient Electronic Medical Records at trial using custodian of records affidavits or the testimony of custodians of records pursuant to *Fed. R. Evid.* 902(11) and *Fed. R. Evid.* 803(6).

*Fed. R. Evid.* 902(11) states that:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

(11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

*Fed. R. Evid.* 803(6) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

---

[4]A Motion for Leave to File this video Exhibit 5 in the Traditional Manner pursuant to Local Rules, Appendix ECF Rule 19(d) is being filed separately.

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

*(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.*

(Emphasis added).

Here, it is respectfully submitted that the defense has shown, and will be able to show at the requested hearing on this motion, that *"the source of information or the method or circumstances of preparation [of the patient, prescription, and Electronic Medical Records in this case] indicate a lack of trustworthiness."* Rule 803(6)(E). It is beyond serious per adventure that the *sin qua non* of the business records exception is the presumed reliability of the putative records the proponent is seeking to have admitted.

*The business records exception is based on the indicia of reliability that attaches to a record created or maintained by [a business] in the ordinary or regular course of their business. [A business'] independent motivation for creating and maintaining reliable business records obviates the need for sworn testimony and cross-examination.* A business record is admissible under Rule 803(6) where a sufficient foundation for reliability is established. Business records are properly admitted under the business records exception to the hearsay rule if they satisfy four requirements: (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d 582, 588 (6th Cir. 2009) (emphasis added), *citing, Redken Labs., Inc. v. Levin,* 843 F.2d 226, 229 (6th Cir.1988). The proponent of the evidence has the burden of proof and must lay an appropriate foundation, including the reliability of the business records being sought to be admitted. *Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d at 588 (citing cases). *See also generally, United States v. Browne*, 606 F.Supp.3d 106, 110 (D.N.J. 2022) (Evidence comprised of a mix of generated data charts from technology companies, subscriber records from internet providers, and account registration information for file hosting services were admissible business records in prosecution for child pornography offenses based on certifications laying proper foundation by custodian of records, court noting that opposing party did not raise any issues of trustworthiness of records, *citing  Fed. R. Evid*. 803(6)(E), and the trial court found none on its own).

Again, here, Dr. Bayolo is raising the issue of their trustworthiness and reliability and opposing the admission of these patient business records pursuant to *Fed. R. Evid*. 803(6)(E). *See* discussion above and Exhibit 1 -5. As such, these records are not admissible as business records pursuant to  Rule 902 (11) and 803(6). *Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d at 588;  *Redken Labs., Inc. v. Levin,* 843 F.2d at 229.

### The Sixth Amendment Confrontation Clause

Also, it is respectfully submitted that this anticipated mass of digital business records evidence, aside from being unreliable, should also be excluded as a violation of the Sixth Amendment's Confrontation Clause.  The  Sixth Amendment provides, in part, that "[i]n all

7

criminal proceedings, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Amend. VI. It is clear, as to be beyond per adventure, that this right to confrontation guaranteed by the Sixth Amendment protects a defendant's right to fully and fairly cross-examine the government's witnesses. *Delaware v. Van Arsdale,* 475 U.S. 673, 678-79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *Delaware v. Fensterer,* 474 U.S. 15, 19-20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985); *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1973).

The Confrontation Clause serves to facilitate the truth-seeking function of a criminal trial by ensuring the veracity and reliability of the evidence presented against a criminal defendant by subjecting the government's witnesses to the crucible of an adversarial proceeding. *Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 2663, 96 L.Ed. 631 (1987) . Generally, confrontation, usually through cross-examination is the principal means by which the believability of a witness and the truth of his or her testimony are tested. *Davis v. Alaska, supra,* 415 U.S., at 316; 94 S.Ct., at 1110. Denial of this right to confrontation is constitutional error of the first magnitude, and no amount of showing of want of prejudice would cure it. *Davis,* 415 U.S., at 318; 94 S.Ct., at 1111; *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968).

The United States Supreme Court reviewed the importance of this "bed rock procedural guarantee" afforded to criminal defendants in both state and federal prosecutions in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, after reviewing the history of the right of criminal defendants to confrontation of

the witnesses against them from Roman times through the English common-law to Colonial times, and to its own more recent holdings, the Supreme Court held that the Confrontation Clause applies not only to in-court testimony, but also to out-of-court statements introduced at trial, regardless of the admissibility of such out-of-court statements under law of evidence. 541 U.S. 36, 50-52, 124 S.Ct. 1354, 1363-64. Noting that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused," the Supreme Court barred the use of such out-of-court testimonial statements reversing its own then controlling precedent in the holding in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had allowed for the admission of out-of-court declarations if they were otherwise admissible under the rules of evidence or if there were other adequate indicia of their reliability. *Crawford,* 541 U.S. 36, 50, 124 S.Ct. 1354, 1363.

Subsequently*, in Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court elaborated further on the parameters of the Confrontation Clause, explaining the meaning of "testimonial statements" for purposes of applying the Court's holding in *Crawford.*, 547 U.S. at 821-22, 126 S.Ct., at 2273. The Court in *Davis* distinguished between two types of statements common in criminal cases. The first, involved a statement given by an alleged victim to a 911 operator while the defendant was still present and while the alleged offense for which the defendant was being tried was still being committed, and which was given in order to enable the police to provide assistance and meet an ongoing emergency. The second, involved statements given after the alleged offense has

been committed and the emergency had past, for the primary purpose of investigating a possible crime committed earlier, such as police reports. 547 U.S. at 822-23, 126 S.Ct. at 2273-74. The Court found that because of their emergency nature, the former statements are not "testimonial statements" for purposes of the Confrontation Clause and the holding in *Crawford* would not bar the admission of such evidence. *Davis,* 547 U.S. at 826-28, 126 S.Ct at 2276-77. However, the Supreme Court found that the latter type of statements, police, and other type of written or otherwise recorded reports, were "testimonial statements" and therefore, were subject to Confrontation Clause holding in *Crawford* because there was no emergency in progress when statements were given since the alleged crime had happened sometime before the statement was given to the police and the statement was given primarily for investigation purposes. 547 U.S. 829-30, 126 S.Ct. at 2278-79. In so holding, the Court also recognized that a conversation which begins as an interrogation to determine the need for emergency assistance can evolve into testimonial statements once that purpose has been achieved, instructing trial courts to redact or exclude the portions of any statement that have become testimonial through *in limine* procedures, as they do with unduly prejudicial portions of otherwise admissible evidence. *Davis,* 547 U.S. 828-29, 126 S.Ct. at 2278-79.

Then, in *Melendez-Díaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed2d 314 (2009), the Supreme Court addressed the issue of whether it was a violation of the Sixth Amendment and the Court's holding in *Crawford* for a trial court to allow the admission at trial of certificates of a drug analysis sworn to by state laboratory chemist attesting that the substance analyzed was cocaine as *prima facie* proof that the substance purportedly

10

possessed by the defendant on trial was cocaine. 557 U.S. at 307-09, 129 S.Ct. at 2530-31. Relying on its holding in *Crawford,* the Court had no trouble finding that "[t]here is little doubt that the documents at issue . . . fall within the core class of testimonial statements. . .", and that "[t]hey are incontrovertibly a 'solemn declaration or affirmation for the purpose of establishing or proving a fact."  557 U.S. at 310-11, 129 S.Ct. 2532, *quoting, Crawford*, 541 U.S. at 52, 124 S.Ct. 1354.  *See also and compare, Bullcoming v. New Mexico,* 564 U.S. 647, 657-662, 131 S.Ct. 2705, 2713-2716, 180 L.Ed.2d 610 (2011) (Supreme Court applying *Crawford* and *Davis* and holding that blood alcohol analyst report inadmissible at trial, and that the defendant was entitled to confront the analyst at trial through cross-examination, rejecting business record exception argument).  The Court in *Meléndez-Díaz* then concluded that under *Crawford* the analysts' affidavits were testimonial statements, the analysts were witnesses for purposes of the Sixth Amendment, and that "[a]bsent a showing that the analysts were unavailable to testify at trial *and* that the [defendant] had a prior opportunity to cross-examine them, the [defendant] was entitled to 'be confronted with' the analysts at trial." 557 U.S. at 311, 129 S.Ct. at 2532.  Finally, and of particular significance to this case, in the course of rejecting "a potpourri" of legal arguments attempting to circumvent the Court's holding in *Crawford,* the Court in *Meléndez-Díaz* addressed the business record exception to the rule against hearsay, *Fed. R. Evid.* 803(6), holding that if one of the principal purposes of the purported business record is the production of evidence for use at trial, the business record exception did not apply and a witness had to testify at trial.  *Meléndez-Díaz,* 557 U.S. at 321-22, 129 S.Ct. at 2538–40, *citing, Palmer v. Hoffman* 318 U.S. 109, 114, 63

11

S.Ct. 477, 480, 87 L.Ed. 645 (1943) (Holding that accident report provided by an employee of a railroad company did not qualify as business record because, although it was kept in regular course of railroads operation, it was calculated for use in court not in business).

Notably, as recently as last week, on June 21, 2024, the Supreme Court again addressed the critical importance of a criminal defendant's Sixth Amendment Right to Confrontation and the continuing viability of *Crawford, Davis* and *Melendez* in its decision in the case of *Smith v. Arizona,* 602 U.S. __, __ S.Ct. __, __ L.Ed. __, Slip. Op. 2024 WL 3074423 (2024). In *Smith*, the defendant was charged with various drug offenses, and the State sent the seized items to a crime lab for scientific analysis. An analyst ran forensic tests on the items and concluded that they contained usable quantities of methamphetamine, marijuana, and cannabis, and prepared notes and records about the testing done. The State originally planned for the analyst who ran the original tests to testify about those matters at the defendant's trial, but the original analyst stopped working at the lab prior to trial. So the State substituted another second analyst, to "provide an independent opinion on the drug testing performed by the first analyst" using the original analyst's notes and records. At trial, the second analyst testified about what the first analyst's records revealed and the results of the original testing, before offering his, the second analyst's purported "independent opinion" of each item's identity. The defendant was convicted. The state appellate court's rejected the defendant's Confrontation Clause arguments, holding that the second analyst could constitutionally present his own expert opinions based on his review of the first analyst's work because the first analyst's statements were then used only to show the basis of the

12

second analyst's opinion and not to prove their truth. *Smith v. Arizona,* Slip. Op. 2024 WL

3074423 at pp. 1, 5-6.  After reviewing the Court's previous Confrontation Clause decisions

in *Crawford*, *Davis*, *Bullcoming*, and *Melendez,* among others, *Smith v. Arizona,* Slip. Op.

2024 WL 3074423 at pp. 3-5, the Supreme Court vacated the lower court's decision and

remanded for further proceedings, concluding that:

> Our holding today follows from all this Court has held about the Confrontation
> Clause's application to forensic evidence. A State may not introduce the
> testimonial out-of-court statements of a forensic analyst at trial, unless she is
> unavailable and the defendant has had a prior chance to cross-examine her. *See
> Crawford,* 541 U.S., at 68, 124 S.Ct. 1354; *Meléndez-Díaz*, 557 U.S., at 311,
> 129 S.Ct. 2527. Neither may the State introduce those statements through a
> surrogate analyst who did not participate in their creation. *See Bullcoming, 564
> U.S., at 663, 131 S.Ct. 2705*. And nothing changes if the surrogate—as in this
> case—presents the out-of-court statements as the basis for his expert opinion.
> Those statements, as we have explained, come into evidence for their
> truth—because only if true can they provide a reason to credit the substitute
> expert. So a defendant has the right to cross-examine the person who made
> them.

*Smith v. Arizona,* Slip. Op. 2024 WL 3074423 at p. 11.

Finally, no argument can be made that the purported business records here are not

considered "testimonial" under the Confrontation Clause requiring that they be trustworthy

and reliable. *See e.g. U.S. v. McGuire*, 632 Fed. Appx. 834, 838 (6th Cir. 2015) (Bank records

of non-testifying taxpayers were not testimonial, and thus admitting them did not violate the

Confrontation Clause, in prosecution for making false, fictitious, or fraudulent to the

government), *citing, United States v. Bansal,* 663 F.3d 634, 666–67 (3d Cir.2011) (Properly

authenticated business records are almost never testimonial for Confrontation Clause

purposes), *citing, Meléndez-Díaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527,

2539–2540, 174 L.Ed.2d 314 (2009) ("Business and public records are generally admissible absent confrontation...."). The only purpose of presenting these patient and other Electronic Medical Records, is for the truth of what they contain or do not contain. *See,* First Superseding Indictment (Doc. 120 at p. 5, paragraph 10) ("As part of the conspiracy, ***Dr. BAYOLO***, Dr. GONZÁLEZ GARCÍA and others indicated that they ***required each "patient" to have certain records in a patient file before writing a controlled substance prescription. BRANDY KING created fraudulent medical records, including MRI reports, to give the appearance of legitimacy, and she charged patient recruiters/marketers additional amounts of money for the creation of the fraudulent medical records. . . .***") (Emphasis added). And, much of the government's expert report focuses on what the patient records show. Again, given the tampering and fraud associated with the patient and other Electronic Medical Records here, it is respectfully submitted that these records do not qualify as business records *ab initio. See, Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d at 588 (***The business records exception is based on the indicia of reliability*** that attaches to a record created or maintained by [a business] in the ordinary or regular course of their business)(emphasis added). Therefore, this Court should grant this motion and preclude the admission of these patient and other Electronic Medical Records.

## Certification of Counsel

Defense Counsel hereby certify pursuant to the Pretrial Discovery Order and the Local Rules, that counsel for the parties have been unable to adequately resolve the issues raised in this motion by agreement.

14

## CONCLUSION

THEREFORE, it is respectfully requested that this Court hold a hearing on this motion, and that this Court enter an order excluding any of the patient records at trial.

RESPECTFULLY SUBMITTED, this June 27, 2024.

| H. MANUEL HERNÁNDEZ, P.A. | JOHN W. BRUSSTAR |
|---|---|
| */s/ H. Manuel Hernández*<br>H. Manuel Hernández<br>Florida Bar No. 0775843<br>620 East Club Circle<br>Longwood, FL   32779<br>Telephone:  407-682-5553<br>E-mail:   manny@hmh4law.com<br>For Defendant Juan Bayolo, M.D. | */s/ John W. Brusstar*<br> (P36920)<br>Co-counsel for Defendant<br>18530 Mack Avenue, Ste 535<br>Grosse Pointe, MI   48236<br>(313) 268-6888<br>johnbrusstar@yahoo.com<br>For Defendant Juan Bayolo, M.D. |

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this June 27, 2024, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all parties on record which will send it to their respective clients.  I further certify that I sent the foregoing and the notice of electronic filing by e-mail, or mail to the following non-CM/ECF participants: Dr. Juan Bayolo.

*/s/ H. Manuel Hernández*
H. MANUEL HERNÁNDEZ

LIST OF EXHIBITS

Exhibit 1      - Pie Chart Showing Dr. Bayolo's Earnings Practicing Telemedicine at the Michigan Practice

Exhibit 2      - Summary Practice Fusion and MD Toolbox Tampering and Unlawful Use of Dr. Bayolo's DEA and NPI Numbers

Exhibit 3      - Calendars of Time Dr. Bayolo Practicing Telemedicine Part-Time As Charged in the First Superseding Indictment Showing Days worked and "Unauthorized Prescriptions Not Written By Dr. Bayolo form 2/26/21 to 7/9/21

Exhibit 4      - Fraudulent Prescribing Reported to MD Toolbox

Exhibit 5      - Video Recording April 16, 2021 ID 5 0054.010, patient F.C. with Recruiter Talking with B.K. and K.G. After Unsuccessful Appointment with Dr. Bayolo (B.K. and K.G. Coaching Government's Confidential Informants Pretending to Be Putative Patients Seeking Illegal Prescriptions for Opioids - Explaining How to "**_Swindle the doctors_**" at at 15:21 "coaching" and 16:19 "swindle doctors") [Disk with Video Filed Separately Under SEAL]. Query: If Dr. Bayolo is a co-conspirator, why would other conspirators need to "swindle" him to obtain illegal prescriptions, the very object of the conspiracy?

16

# TABLE OF AUTHORITIES

CASES

*Bullcoming v. New Mexico,* 564 U.S. 647, 131 S.Ct. 2705,
180 L.Ed.2d 610 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d 582 (6th Cir. 2009) . . . . . . . . . . . . . . . 7

*Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354,
158 L.Ed.2d 177 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-13

*Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105,
39 L.Ed.2d 347 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266,
165 L.Ed.2d 224 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292,
88 L.Ed.2d 15 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Delaware v. Van Arsdale,* 475 U.S. 673, 106 S.Ct. 1431,
89 L.Ed.2d 674 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658,
96 L.Ed. 631 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Meléndez-Díaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527,
174 L.Ed2d 314 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13

*Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531,
65 L.Ed.2d 597 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Palmer v. Hoffman* 318 U.S. 109, 63 S.Ct. 477,
87 L.Ed. 645 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Redken Labs., Inc. v. Levin,* 843 F.2d 226 (6th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Arizona,* 602 U.S. , S.Ct. , L.Ed. ,
Slip. Op. 2024 WL 3074423 (2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748,
   19 L.Ed.2d 956 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. McGuire*, 632 Fed. Appx. 834 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Browne*, 606 F.Supp.3d 106 (D.N.J. 2022) . . . . . . . . . . . . . . . . . . . . . . 7


STATUTES

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


RULES

*Fed. R. Evid.* 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Fed. R. Evid.* 803(6)(A)-(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Evid.* 902(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7


U.S. CONSTITUTION

U.S. Const., Amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11



**ANALYSIS OF 2021-2022 DEPOSITS - MICHIGAN PRACTICE**

*Dr Bayolo 1%*
*(+ or - 1%)*

*$2 Million Street Value*
*(+ or - 1%)*

"...the drugs involved in this conspiracy have an estimated street value of more than $2 million."

| AMOUNTS DR. BAYOLO RECEIVED | |
| --- | --- |
| 2021 | $28,275 |
| 2022 | $6,800 |
| TOTAL | $35,075 |

SOURCE: DR. BAYOLO'S CASH APP ACCOUNT
FIFTH THIRD BANK # 7929300783

Exhibit 1

24 JUN 2024
**RE: Practice Fusion and MD Toolbox tampering with and unlawful use of DEA and NPI numbers.**
Prepared for H. Manuel Hernandez
By: Michael McGowan, Medical Records Forensic Analyst.

According to the Practice Fusion EHR user activity logs, Kevin Green has uploaded changed and/or modified documents to Dr. Bayolo's Practice Fusion EHR profile. Ultimately, Practice Fusion REVOKED Kevin Greene's Practice Fusion user license.

**Synopsis of Practice Fusion EHR Activities Audit Logs:**

➢ KG assigned Practice Fusion Licenses to Himself, Juan Bayolo, and Kashayla Harris.

➢ KG created an EHR profile name for Dr. Juan C Bayolo, MD.

➢ KG granted emergency access permissions for Kashayla Harris and requested and received

➢ EPCS and a setting to enable the management of patients for Kashayla in Dr. Bayolo's profile.

➢ Uploaded and updated PMP AWARE – MAPS documents, which show a history of opiate use and prescriptions for the patients, into the EHR.

➢ Added clinical decision alerts 33 times to Bayolo's SOAP notes.

➢ Added a new SOAP note to Dr. Bayolo's profile 517 times.

➢ Accessed legacy patient records 1,803 times.

➢ Scheduled 553 patient appointments.

➢ Changed 193 Appointments

➢ Canceled 36 Appointments

➢ Deleted 67 documents from the EHR.

➢ Printed 45 medical imaging orders for patients.

➢ Printed 21 patient reports. Updated 3 patient Diagnosis.

➢ 21 times failed to give the proper password.

➢ Initiated Four password changes.

PAGE # 1

Exhibit 2

Synopsis of MD TOOLBOX E-Prescribing Platform Audit Logs.
Reference: Gov_P7-00000005.xls I Gov_P7-00000002 I Gov_P7-00000003 I Gov_P7-00000006 I Gov_P7-00000007

K. Green sets up three separate logins in three distinctly different practices for Dr. Bayolo, MD.

> Juan B2 Priority One Health Management, PLLC Practice Number 24682
> Bayolo08 Priority One Health Management, PLL Practice Number 23768
> Juanbayolo3 Absolute Health Management, PC Practice Number 24068
> An email was created by Greene Bayolo.priorityone@gmail.com
> Greene sets up a shared account and uses Bayolo.priorityone@gmail.com to communicate with MD toolbox
> staff to impersonate Dr. Bayolo. As the account is shared, Greene gets the same email at it.medicalservices2@gmail.com
> MD toolbox could not find a publicly listed phone number for the clinic and requested Dr. Bayolo provide a valid one.
> 03/19/2021 Kashayla Harris becomes the financial guarantor of the MD Toolbox account.
> MD Toolbox will bypass the VIP two-factor authentication when a Key Fob hardware authenticator is used.
> When the Key Fob is used, the practitioner can
>> E-prescribe outside of a patient encounter that occurred in Practice Fusion.
>> Create a prescription, save it, and send it later.
>> Manipulating pharmacy locations and having multiple pharmacies for the same patient.
>> E-Send and Print Scripts in the Office
> A key Fob was ordered to be provided to Kashayla Harris.
>> 05/14/2021 she (Kevin Greene) completed ID proofing through Experian.
>> 05/17/2021 she (Kevin Greene) was notified that payment was not received and provided instructions to pay.
>> 05/18/2021 she (Kevin Greene) was notified that the Key Fob had shipped.

PAGE # 2

Exhibit 2

Synopsis of MD TOOLBOX E-Prescribing Platform Audit Logs.
Reference: Gov_P7-00000005.xls | Gov_P7-00000002 | Gov_P7-00000003 | Gov_P7-00000006 | Gov_P7-00000007

- 06/30.2021 MD Toolbox reports her DEA number is incorrect.
- 06/31/2021 MD toolbox reaches out to Kashayla Harris about Key Fob Registration.
- 05/14/2021 she (Kevin Greene) completed ID proofing through Experian.
- 05/17/2021 she (Kevin Greene) was notified that payment was not received and provided instructions to pay.
- 05/18/2021 she (Kevin Greene) was notified that the Key Fob had shipped.
- 06/30.2021 MD Toolbox reports her DEA number is incorrect.
- 06/31/2021 MD toolbox reaches out to Kashayla Harris about Key Fob Registration.
- 06/04/21 **06:43 AM** Kevin Greene was locked out of the account and does not have access to the email address to log in.
- 06/04/21 **3:04 PM** utilizing an email address priority.maps1@yahoo.com Mr. Green starts a new account, and Kashayla Harris is the account administrator.
- 07/1/2021 Bayolo called MD Toolbox about his account security; MD Toolbox told him about the email addresses juanbayolo@yahoo.com Juanbayolo.absolutehealth@gmail.com
- MD Toolbox investigation reveals that bayolo.priorityone@gmail.com , Juanbayolo.absolutehealth@gmail.com , and juanbayolo@yahoo.com were associated with two additional practices that had **SEVERE** account security issues and were deactivated due to **FRAUDULENT** activity.

PAGE # 3

Exhibit 2

Synopsis of MD TOOLBOX E-Prescribing Platform Audit Logs.
Reference: Gov_P7-00000005.xls | Gov_P7-00000002 | Gov_P7-00000003 | Gov_P7-00000006 | Gov_P7-00000007

➢ 07/21/2021 MD Toolbox staff called 734-855-4408 to reach Kashayla Harris, but the Voice mail was full. The number verified during account setup was called 901-286-0166, reaching a person who identified as Kashayla Harris and asking to confirm her Michigan DEA number. She read out a state license number.

➢ The person reached by phone at 901-286-0166 stated the following:

➢ They did not know what MD Toolbox was/is, had never heard of it, and had never used it.

➢ L. Mohammed Rahman contacts the MD toolbox staff to alert them that someone has logged into his account. MD Toolbox states a person named Keith called the next day, alleging that Mohammed was writing scripts without seeing patients. MD toolbox could not determine who was telling the truth and terminated the account.

➢ They are currently onboarding with Priority One but have not started yet, have nor sent RXs

➢ They do not know the email addresses [priority.maps1@yahoo.com](mailto:priority.maps1@yahoo.com) or [mdtool@yahoo.com](mailto:mdtool@yahoo.com)

➢ They did not receive an activation email from MD Toolbox.

➢ They were getting set up with Priority One on Practice Fusion and verified with them, nut have no letter and have not yet logged in.

➢ Account SUSPENDED by MD Toolbox pending further investigation.

PAGE # 4

Exhibit 2



UNAUTHORIZED PRESCRIPTIONS NOT WRITTEN BY DR. BAYOLO  2/26/21-7/9/21

**290** UNAUTHORIZED SCRIPTS WHILE NOT WORKING Over 84 Days

Employed Partial Days/Evenings **Feb 26, 2021- July 9, 2021\*** *RETURNED SUPERVISING NURSE PRACTITIONERS DECEMBER 2021*

**71** PARTIAL DAYS/EVENINGS WORKED

**618** UNAUTHORIZED SCRIPTS TOTAL

SOURCE: MDToolbox, MAPS

Exhibit 3

# Fraudulent Prescribing reported to MD Toolbox.



**ABSOLUTE HEALTH MANAGEMENT, P.C**          3/24/21          3/26/21

**Account 24068**

**Account Summary:**

Account was only active for 2 days:  Helpdesk received calls from Mohammed alleging that "someone logged in as him" and

the next day Staff Level user Keith calling in alleging that Mohammed was writing rx without seeing patients and he wanted us to deactivate him (since he was an admin)

Support Manager cancelled the account and informed client account was cancelled due to above reports.   No evidence to support who was telling the truth.

**Services/Billing Info**

Signed up for e-Prescribe          No billing info collected/Cancelled during free trial

**Locations/Addresses**

| Address | Address2 | City | State | Zip | Phone | Fax |
|---|---|---|---|---|---|---|
| 21700 Greenfield Rd | | Oak Park | MI | 48237 | (586)693-2559 | (586)693-2585 |

**All User Logins in Account**

| FirstName | LastName | Position | Login/Username | PermissionLevel | Email |
|---|---|---|---|---|---|
| Mohammed | Rahman | NP | rahman3 | Prescriber/Full | mohammedrahman.absoultehealth@gmail.com |
| Keith | Young | Admin | Absoultehealth7 | Admin Only | absoultehealth7@gmail.com |
| Angelo | Foster | Office | Angelof22 | Admin Only | pa.pcfixed@gmail.com |
| Juan | Bayolo | MD | Juanbayolo3 | Prescriber/Full | Juanbayolo.absoultehealth@gmail.com |

**HelpDesk Notes/Reported Violations in Account**

| Date | Activity | Description |
|---|---|---|
| 3/24/2021 | New Account | Account setup and Provider completes ID Proofing. |
| 3/25/21 7:07 AM | Incoming Call | Incoming call from Mohammed from verified # <(313)725-0578> stating that someone at their practice has been using their acct to prescribe and they need to reset pw... |
| | | Support helped provider reset pw/secure account in case someone had their password. |
| 3/26/21 9:01 AM | Incoming Call | Keith calling in stating that they need to remove Mohammed from the account as provider 'sent rx's but never saw patients' |
| | | Account cancelled |

REFERENCE : SupoenaData20220908.XLS

Exhibit 4

Exhibit 5 -   Video Recording April 16, 2021 ID 5 0054.10 and 11, patient F.C. with Recruiter Talking with  B.K. and K.G. After Unsuccessful Appointment with Dr. Bayolo ( B.K. and K.G. Coaching Government's  Confidential Informants Pretending to Be Putative Patients Seeking Illegal Prescriptions for Opioids - Explaining How to "***Swindle***" the Physicians, at 10:00 and 14:00) [Disk with Video Filed Separately Under SEAL]. Query: If Dr. Bayolo is a co-conspirator, why would other conspirators need to "swindle" him to obtain illegal prescriptions, the very object of the conspiracy?

TABLE OF AUTHORITIES

CASES

*Bullcoming v. New Mexico,* 564 U.S. 647, 131 S.Ct.  2705,
    180 L.Ed.2d 610 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

*Cobbins v. Tennessee Dept. of Transp.,* 566 F.3d 582 (6ᵗʰ Cir. 2009) . . . . . . . . . . . . . 6, 7

*Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354,
    158 L.Ed.2d 177 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-13

*Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105,
    39 L.Ed.2d 347 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266,
    165 L.Ed.2d 224 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292,
    88 L.Ed.2d 15 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Delaware v. Van Arsdale,* 475 U.S. 673, 106 S.Ct. 1431,
    89 L.Ed.2d 674 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658,
    96 L.Ed. 631 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Meléndez-Díaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct.  2527,
    174 L.Ed2d 314 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13

*Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531,
    65 L.Ed.2d 597 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Palmer v. Hoffman*  318 U.S. 109, 63 S.Ct. 477,
    87 L.Ed.  645 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Redken Labs., Inc. v. Levin,* 843 F.2d 226 (6th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Smith v. Arizona,* 602 U.S.      ,     S.Ct.     ,     L.Ed.     ,
    Slip. Op. 2024 WL 3074423 (2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748,
  19 L.Ed.2d 956 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. McGuire*, 632 Fed. Appx. 834 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Browne*, 606 F.Supp.3d 106 (D.N.J. 2022) . . . . . . . . . . . . . . . . . . . . . 7


STATUTES

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


RULES

*Fed. R. Evid.* 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Fed. R. Evid.* 803(6)(A)-(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Evid.* 902(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7


U.S. CONSTITUTION

U.S. Const., Amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

18