UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      v.                                                          Case No. 2022-cr-20563-JJCG–APP
                                                                 Honorable Jonathan J.C. Grey

D-3 JUAN BAYOLO, M.D.
_____/

**DR. JUAN BAYOLO'S POST FIRST SUPERSEDING INDICTMENT
*DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF THE
GOVERNMENT'S PROFFERED MEDICAL EXPERT, REQUEST FOR A FULL
*DAUBERT* HEARING, AND REQUEST FOR SPECIFIC
ADDITIONAL DISCOVERY**

      JUAN BAYOLO, M.D., by and through his undersigned attorneys, and pursuant to *Fed. R. Crim. P.* 12(b), *Fed. R. Evid.* 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Company, LTD. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), requests that this Court hold a full *Daubert* hearing, and enter an order excluding the testimony of the government's proffered medical expert witness, Dr. Daniel Berland, the proffered medical expert based on 1- his reliance on false information contained in patient records that were tampered with and falsified by persons other that Dr. Bayolo and without Dr. Bayolo's knowledge; 2- his combining the two doctors named in this case, who did not work together, barely knew each other, practiced telemedicine from two separate and distant states; 3 - the proffered medical expert's lack of qualification or credentials in the field of telemedicine and palpable hostility to the practice of telemedicine, even during the Covid-19 pandemic, and 4- the proffered

medical expert's transparent and repeated efforts to attempt to violate *Fed. R. Evid.* 704(b) and attempt to essentially declare the defendants guilty via purported medical expert fiat.

**A *DAUBERT* HEARING ON THIS MOTION IS REQUESTED.** At present a hearing on currently pending motions is scheduled for July 30, 2024 at 10:00 a.m. *See* Re-Notice of In Person Hearing (Doc. 150). The Court had previously set a deadline of June 28, 2024 for the filing of any additional motions. *See,* Stipulation to Continue, *Etc*. and Order Continuing, *Etc*. (Doc. 125). It is respectfully requested that this motion be heard during the July 30, 2024, or at a full *Daubert* hearing held before trial currently scheduled for October 1, 2024.

## MEMORANDUM OF LAW

### *Operative Facts*

On October 27, 2022, Dr. Bayolo and the co-defendants were all charged by way of a grand jury indictment with one count of conspiring to possess with intent to distribute and distribution of Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. See Indictment (Doc. 1). On December 14, 2023, the First Superseding Indictment was returned by a grand jury. (Doc. 120). Essentially, the defendants are charged with allegedly conspiring to illegally sell prescription drugs for cash payments at various medical clinics located in the Metropolitan Detroit area, by knowingly and intentionally disbursing prescriptions for controlled narcotics purportedly outside the course of legitimate medical practice and allegedly for no legitimate medical purpose, and also for allegedly selling controlled narcotic

2

pills without prescriptions. *See*, First Superseding Indictment (Doc. 120 at pp. 1-4, paragraphs 1-4, 7, 9).

### *Government's Expert's Report*

On May 29, 2024, the government disclosed the long promised "expert report" of Dr. Daniel Berland. *See* Exhibit 1- Dr. Daniel Berland's Undated Redacted "Report of Dr. Berland in the Case of the US (sic) v. Dr. Juan Bayolo and Dr. Rene González García" (hereinafter "Proffered Expert's Report").  Notably, even though both Dr. Bayolo's and Dr. González' practices, as they relate to the charges in this case, involved telemedicine, Dr. Berland has no real knowledge or expertise in telemedicine. *See* Exhibit 2 - Dr. Daniel Berland's CV.  The report, by a proffered medical expert that, according to the expert disclosure documents, has been used often by the government in alleged "pill mill" cases, four times in the last four years[1], is all of seven pages long, 3 pages less than the government's original one count indictment. *See* Indictment (Doc. 1), and it, the proffered medical expert's report, has many troubling issues.

First, the report combines, conflates, and arguably confuses the government's proffered medical expert's opinion regarding both Dr. Bayolo and Dr. González, two separate doctors, with two separate telemedicine practices, in two separate states, Dr. Bayolo in

---

[1]According to the government's "Fed. R. Crim. P. 16(a)(1)(G) Summary" Dr. Berland has testified in the following cases in the last four years: *United States v. Shelton* (EDMI Case No. 17-cr-20701), *United States v. Jankowski* (EDMI Case No. 17-cr-20401), *United States v. Awaisi* (EDMI Case No. 21-cr-20295) and *United States v. Sherman* (EDMI Case No. 21-20393).

Florida and Dr. González in Arizona, who hardly knew each other, never consulted with each other, and rarely, if ever, even spoke to each other. *See, e.g.,* Exhibit 1 - Proffered Expert's Report [REDACTED] at p. 1 ["I was retained by the United States to provide opinions and analysis concerning the controlled medication prescribing and general practices by both Dr. Juan Bayolo and Dr. Rene González García."], p. 2 ["Materials provided to me and reviewed for this report included 91 patient files from different practice sites . . ." (Not identifying how many and which files belonged to each doctor)], p.2 ["Dr. Bayolo (B) and Dr. González García (GG) engaged in a practice that prescribed controlled medications, . . ." ( treating both doctors as if they were partners, which they were not)], p. 4 ["20 patient records were reviewed from the Priority One Health Management site, . . " (Not identifying which doctor)], p. 4 ["20 patient records were reviewed from the Priority One Health Management site, . . ." (Not identifying which doctor)].

Second, importantly, the report relies heavily on Dr. Berland's review of 91 patient files that are themselves demonstrably unreliable, and were tampered with without the knowledge of Dr. Bayolo. *See,* Dr. Juan Bayolo's Post First Superseding Indictment Motion to Exclude Dr. Bayolo's Patients' Records and Other Electronic Medical Records Based on Evidence of Tampering, Fraud and Unreliability (Doc. 165)

4

(Reviewing evidence of tampering and fraud related to Dr. Bayolo's patient records)[2]. Also of concern, Dr. Berland does not identify how these 91 patient files were chosen, if they are random samples of patient files related to the clinics involved in this case or if they were "cherry-picked" by the government.

Third, and of more concern, is Dr. Berland's repeated attempts to opine about the ultimate issue of the defendant's *mens rea,* ergo the defendant's guilt, in violation of *Fed. R. Evid.* 704(b). *See, e.g.*, Exhibit 1 - Proffered Expert's Report at p. 2 ["Dr. Bayolo (B) and Dr. González García (GG) engaged in a practice that prescribed controlled medications, particularly highly-sought opioids, in exchange for cash . . ."]; p. 3 ["Prescriptions were then sent electronically to pharmacies where, according to MAPS data, they were often filled by cash payment, not expected in a legitimate practice, or by using government insurance (Medicare or Medicaid), essentially defrauding the Federal government . . ."]; p. 4 ["These prescribers had no special training or certification that would make them qualified to engage in a pain practice and with no primary or specialty practice seen to occur, there was, in fact, no legitimate medical practice that occurred."]; p. 4 ["12 patient records were reviewed from the Oak Park site, all of whom were seen at the other sites. Some of these patients were also seen by other prescribers, showing the scale of the practice scheme."]; p. 6 ["Counts

---

[2]The arguments and exhibits in Dr. Juan Bayolo's Post First Superseding Indictment Motion to Exclude Dr. Bayolo's Patients' Records and Other Electronic Medical Records Based on Evidence of Tampering, Fraud and Unreliability (Doc. 165) motion are hereby incorporated herein by reference.

Contained in the First Superseding Indictment - I reviewed each patient chart for each of the counts in the indictment. Based upon those reviews plus other information such as MAPS data as described in this report, the analysis below identifies the specific instances of prescribing of controlled medications that is not supported by any clinical scenario or documentation, and outside the course of professional medical practice and for no legitimate medical purpose."]; p. 7 ["Comments: Based upon all the above information, I conclude that the practices of both Drs. Bayolo and González García were outside the course of professional medical practice. As part of the practice scheme, they engaged in phony "visits" and issued high value prescriptions for no medical purpose other than in exchange for cash payments."].

Finally, fourth, Dr. Berland, the government's proffered ***medical expert***, does not confirm anywhere in his report that his purported expert conclusions are "made within a reasonable degree of medical certainty", essentially rendering his purported medical expert report and the opinions stated therein, meaningless in a court of law.

## LAW

*Fed. R. Evid.* 702 governs the admissibility of expert testimony, and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(a) the expert's scientific , technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,

(b) the testimony is based on is based upon sufficient facts or data;

6

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court addressed the requirements of Rule 702, and held:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the fact in issue.

*Id.* 509 U.S. at 592-593, 113 S.Ct. at 2796. As such, the trial court's role when considering the admissibility of a proffered expert's testimony is to act as a "gate keeper", ensuring that only expert testimony that is relevant and reliable is admitted. *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795. The trial court's duty "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Additionally, the testimony must also be relevant. *Daubert,* 509 U.S. at 589, 113 S.Ct. at 2795. The proponent of the expert's testimony must establish admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244, 251 (6th Cir. 2001). In performing this "gate keeper" role, the trial court enjoys broad discretion in

determining whether the factors listed in *Daubert* reasonably measure reliability in a given case. *Kumbo* 526 U.S. at 153, 119 S.Ct. at 1176.

The *Daubert* Court was clear that an expert's opinion cannot merely be based on a "subjective belief or unsupported speculation." *Id.,* 509 U.S. at 590, 113 S.Ct. at 2795. In order to be admissible, the expert's opinion or testimony "must be supported by appropriate validation, *i.e.*, 'good grounds,' based on what is known . . . the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.*; *see also, Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194, 1197 (11th Cir. 2002) ("The *Daubert* Court made it clear that ***the requirement of reliability found in Rule 702 was the centerpiece of any determination of admissibility***.") (Emphasis added).

Here, it is respectfully submitted based on the above, and the many failings of the government's proffered medical expert's report, this Court should grant this motion, hold a full *Daubert* hearing, and exclude the testimony of the government's proffered expert.

### *Fed. R. Evid. 704*

*Fed. R. Evid.* 704 addresses when and if an expert witness may testify and render an opinion on the ultimate issue being litigated, and provides that:

> (a) In General--Not Automatically Objectionable. An opinion is not objectionable just because it embraces an ultimate issue.
>
> (***b) Exception. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.***

8

(Emphasis added). Pursuant to Rule 704(b), it is beyond cavil, that a putative expert witness may not testify in a manner that obviates the trier of facts function in making the ultimate determination if a defendant had the necessary *mens rea* to commit the crime charged. Put more simply, an expert witness cannot opine if the defendant is guilty or innocent. *See generally, U.S. v. Warshak,* 631 F.3d 266, 324 (6th Cir. 2010) (Expert witness is not permitted to opine on issue of whether the defendant did or did not have mental state or condition constituting element of crime charged or of defense thereto).

 Here, again, and as set out above, it is respectfully submitted that the government's putative medical expert's report violates Rule 704(b) repeatedly. *See, e.g.*, Exhibit 1 - Proffered Expert's Report at p. 2 ["Dr. Bayolo (B) and Dr. González García (GG) engaged in a practice that prescribed controlled medications, particularly highly-sought opioids, in exchange for cash . . ."]; p. 3 ["Prescriptions were then sent electronically to pharmacies where, according to MAPS data, they were often filled by cash payment, not expected in a legitimate practice, or by using government insurance (Medicare or Medicaid), essentially defrauding the Federal government . . ."]; p. 4 ["These prescribers had no special training or certification that would make them qualified to engage in a pain practice and with no primary or specialty practice seen to occur, there was, in fact, no legitimate medical practice that occurred."]; p. 4 ["12 patient records were reviewed from the Oak Park site, all of whom were seen at the other sites. Some of these patients were also seen by other prescribers, showing the scale of the practice scheme."]; p. 6 ["Counts Contained in the First Superseding

9

Indictment - I reviewed each patient chart for each of the counts in the indictment. Based upon those reviews plus other information such as MAPS data, as described in this report, the analysis below identifies the specific instances of prescribing of controlled medications that is not supported by any clinical scenario or documentation, and outside the course of professional medical practice and for no legitimate medical purpose."]; p. 7 ["Comments: Based upon all the above information, I conclude that the practices of both Drs. Bayolo and González García were outside the course of professional medical practice. As part of the practice scheme, they engaged in phony "visits" and issued high value prescriptions for no medical purpose other than in exchange for cash payments."].

*Additional Discovery Regarding Government's Medical Expert Witness*
*Dr. Daniel Berland and Anyone Assisting Dr. Berland in preparing His Expert Report*

It is respectfully requested that the Court order the government to provide the following discovery at least 14 days before any *Daubert* hearing, and in any event, before trial:

All payments made to Dr. Berland in relation to this case;

All payments made to Dr. Berland by the government within the last 4 years for all work done for the government or law enforcement that the government is aware of;

A detailed list of all cases and matters Dr. Berland worked for the government or for law enforcement in any manner within the last 4 years;

All documents related to any case Dr. Berland worked on where the government did not use him as their expert and the reason;

The specific full patient files reviewed by Dr. Berland;

All documents related to the person or persons who chose the specific files Dr. Berland reviewed and why those files were chosen.

Any documents, reports, or information in whatever form about issues, complaints, conflict of interest, regarding Dr. Berland.

### Certification of Counsel

Defense Counsel hereby certify pursuant to the Pretrial Discovery Order and the Local Rules, that counsel for the parties have been unable to adequately resolve the issues raised in this motion by agreement.

### CONCLUSION

THEREFORE, it is respectfully requested that this Court hold a full *Daubert* hearing on this motion, and that this Court enter an order excluding the testimony of the government's proffered medical expert witness for the reason set out above.

RESPECTFULLY SUBMITTED, this June 27, 2024.

| H. MANUEL HERNÁNDEZ, P.A. | JOHN W. BRUSSTAR |
|---|---|
| /s/ *H. Manuel Hernández*<br>H. Manuel Hernández<br>Florida Bar No. 0775843<br>620 East Club Circle<br>Longwood, FL 32779<br>Telephone: 407-682-5553<br>E-mail: manny@hmh4law.com<br>For Defendant Juan Bayolo, M.D. | /s/ *John W. Brusstar*<br>(P36920)<br>Co-counsel for Defendant<br>18530 Mack Avenue, Ste 535<br>Grosse Pointe, MI 48236<br>(313) 268-6888<br>johnbrusstar@yahoo.com<br>For Defendant Juan Bayolo, M.D. |

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this June 27, 2024, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all parties on record which will send it to their respective clients. I further certify that I sent the foregoing and the notice of electronic filing by e-mail, or mail to the following non-CM/ECF participants: Dr. Juan Bayolo.

*/s/ H. Manuel Hernández*
H. MANUEL HERNÁNDEZ

## LIST OF EXHIBITS

Exhibit 1-    Dr. Daniel Berland's Undated Redacted "Report of Dr. Berland in the Case of the US (sic) v. Dr. Juan Bayolo and Dr. Rene González García" . . . . . . 3

Exhibit 2 -    Dr. Daniel Berland's CV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## TABLE OF CITATIONS

### CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786,
  125 L.Ed.2d 469 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8

*Kumho Tire Company, LTD. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167,
  143 L.Ed.2d 238 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

*Nelson v. Tenn. Gas Pipeline, Co.*, 243 F.3d 244 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . 7

*Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Warshak,* 631 F.3d 266 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### STATUTES

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### RULES

*Fed. R. Crim. P.* 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Fed. R. Crim. P.* 16(a)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Fed. R. Evid.* 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 8

*Fed. R. Evid.* 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 8, 9