AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. 6:22-mj- 2179 |
| *or identify the person by name and address)* | ) | |
| A cellular telephone assigned call number | ) | |
| 787-587-6195 serviced by AT&T | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Middle _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Unlawful distribution of a controlled substance and Conspiracy to distribute |
| 21 U.S.C. § 846 | and posses with intent to distribute controlled substance. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nicholas Napolitano, SA, US HHS-OIG
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means).*

Date: _____ 11/14/2022 _____

City and state: _____ Orlando, Florida _____

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BY: _____ TiffanyPalmer _____

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

SW_0282

STATE OF FLORIDA                    Case No. 6:22-mj- 2179

COUNTY OF ORANGE

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Nicholas Napolitano, Special Agent US Dept. of Health and Human Services, being duly sworn, depose and state as follows:

## AGENT BACKGROUND AND QUALIFICATIONS

1.     I am a Special Agent employed by the United States Department of Health and Human Services, Office of Inspector General, Office of Investigations ("HHS-OIG").  I have been so employed since September of 2018.  I am an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, in that I am empowered by law to conduct investigations and to make arrests for federal felony offenses.

2.     As a Special Agent with HHS-OIG, I have received training through the Criminal Investigator Training Program at the Federal Law Enforcement Training Center at Glynco, Georgia, as well as specialized training in subjects including, but not limited to, health care fraud, and prescription drug diversion. I am currently assigned to the HHS-OIG Detroit Field Office. My duties include investigating violations of United States federal law, including, but not limited to, Title 18, United States Code, Section 21 United States Code, Section 841 (Unlawful Distribution of a Controlled Substance) and Title 21 United States Code Section 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances).  In connection with investigating these

1

offenses, I have participated in the execution of search warrants for documents and other evidence in cases involving violations of these offenses.

## PURPOSE OF THE AFFIDAVIT

3.      This affidavit is written is support of an application under Rule 41 of the Federal Rules of Criminal Procedure to seize and search the following cellular telephone (**Subject Telephone**) believed to be located within the Middle District of Florida:

- A cellular telephone assigned call number 787-587-5195 serviced by AT&T (**Subject Telephone**).

4.      As discussed herein, the statements in this affidavit are based upon information I learned during the investigation, including information provided to me by other law enforcement agents, and my experience and background as an HHS-OIG Special Agent. Because this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included every fact known to me concerning this investigation. I have only set forth the facts I believe are necessary to establish probable cause to believe that evidence of crime, fruits of crime, contraband, and other items illegally possessed in violation of the aforementioned federal laws, are located within the **Subject Telephone**.

5.      As discussed herein, there is probable cause to believe that certain evidence of and fruits and instrumentalities of violations of the Target Offenses is located within the **Subject Telephone**.

SW_0284

## PRESCRIPTION DRUG DIVERSION SCHEME

### Overview

6.     An investigation conducted by the FBI and Department of Health and Human Services – Office of Inspector General ("HHS-OIG") revealed a prescription drug diversion scheme involving Dr. Juan Bayolo, Dr. Gonzalez-Garcia, Brandy King, Angelo Foster, and others yet unnamed. The purpose of the scheme was for Dr. Bayolo, and others, to write controlled substance prescriptions, in exchange for cash payments, that could be filled at various pharmacies and subsequently diverted to street sales. As part of the scheme, purported medical practices and clinics were organized and operated, including Priority One Health Management (POHM) and Lincoln Park Health Management (LPHM), at different times and at different locations, within the Detroit, Michigan area. Although the locations and names of the clinics changed during the course of the conspiracy, the subjects discussed herein remained the same throughout the conspiracy.

7.     Priority One Health Management (POHM) was originally located in Eastpointe, MI from March 2021 until June 2021. In June 2021, Special Agents became aware that POHM moved locations to Livonia, MI and retained the name Priority One Health Management. In August 2021, Special Agents became aware that POHM had closed.

8.     In September of 2021, Special Agents became aware that King was an employee at a clinic called Lincoln Park Health Management (LPHM), located in Lincoln Park, MI. According to LARA records, the registered agent for LPHM was

3

Michael Reed, and Fleetwood Harris was added as a member of LPHM on November 5, 2021.

9.      Dr. Juan Bayolo, a licensed medical doctor, was employed as such at POHM and LPHM. Brandy King (King) was the manager at POHM and LPHM while each clinic was operational. King oversaw the daily operations at each clinic and accepted cash payments from patient recruiters in exchange for the controlled substance prescriptions. Angelo Foster (Foster) was the owner and operator of POHM and LPHM. Foster was responsible for hiring and paying the medical providers who worked at POHM and LPHM, including Dr. Bayolo, as well as overseeing the daily operations at the clinics.

10.     Based on my training and experience, individuals involved in prescription drug diversion schemes frequently move locations and change the names of the clinics they operate to avoid detection of law enforcement.

<u>MAPS Prescription Data for Dr. Bayolo</u>

11.     The Michigan Automated Prescription System (MAPS) is an online database maintained by the Michigan Department of Community Health that records all controlled substance prescriptions that have been written by prescribing doctors and have been filled at a pharmacy within the state of Michigan. By law Michigan pharmacies are required to input data about the patient, prescribing physician, dispensing pharmacy, and the details of controlled substance prescriptions that are prescribed.

4

12.     According to MAPS data, between February 1, 2021 (the month in which POHM was incorporated as a business) through May 2022, Dr. Bayolo prescribed more than 74,000 dosage units of controlled substance medications, including more than 25,000 oxycodone-acetaminophen 10-325mg (commonly known as Percocet) pills, more than 28,000 oxycodone 30mg pills, and more than 10,000 hydrocodone-acetaminophen 10-325mg (commonly known as Norco) pills.

13.     Based on my training and experience, I am aware that the opioid drugs prescribed by Dr. Bayolo are among the most commonly abused and diverted prescription pills in the Detroit, Michigan area, and they have an estimated conservative street value of more than $2.6 million.

## SUBJECT TELEPHONE

### AT&T cellular telephone assigned call number 787-587-6195
### (Subject Telephone)

14.     Phone records obtained via administrative subpoena from AT&T on January 20, 2022, showed that telephone account 787-587-6195 was an active account subscribed to Juan C. Bayolo at the address of 3131 Egrets Landing Drive, Lake Mary, FL 32746.  The account was active since at least August 17, 2013. Based on information from a confidential human source (CHS), text messages from the **Subject Telephone**, and analysis of toll records, I believe that Dr. Juan Bayolo is the user of **Subject Telephone**.

5

## PROBABLE CAUSE

### CHS Information and Recordings

15.     During this investigation, Special Agents relied on the information of multiple FBI confidential human sources (CHSs), including CHS-1. CHS-1 has been providing reliable information to the FBI since approximately January 2011. CHS-1 has conducted multiple consensually recorded conversations with King and Foster. CHS-1 has paid cash to King directly in exchange for opioid prescriptions issued by Dr. Bayolo.

16.     During this investigation, CHS-1 posed as a patient recruiter and took other CHSs (CHS-2 and CHS-3) to POHM and LPHM to receive medically unnecessary controlled substance prescriptions from Dr. Bayolo and others. The CHS information contained in this affidavit has been corroborated by other physical surveillance, information from the Michigan Automated Prescription System ("MAPS"), and through consensually recorded controlled prescription drug purchases, meetings, and phone calls. The information provided by CHS-1, CHS-2 and CHS-3 has never been found to be false or misleading. For these reasons, I consider the CHSs' information to be credible and reliable.

17.     A "patient recruiter" is a term commonly used by law enforcement to describe the role of an individual who is involved with recruiting patients to see a doctor for the sole purpose of obtaining medically unnecessary prescriptions for controlled substances, filling those prescriptions at a pharmacy, and subsequently diverting those controlled substance pills to street sales. Based on my training and experience, I am

6

aware that the schedule II-controlled substance pills prescribed in this scheme sell for a very high street value in the Detroit, Michigan area.

18.     In March 2021, Special Agents initiated an investigation into Priority One Health Management (POHM), originally located at 21421 Kelly Road, Eastpointe, Michigan 48021. The investigation was based on information provided by CHS-1 that POHM was issuing prescriptions for controlled substances that may not be medically necessary. CHS-1 advised that patients could visit POHM to receive a narcotic prescription based on their previous MAPS prescription history. CHS-1 was aware of another patient recruiter, unnamed for the purposes of this affidavit, who was taking patients to POHM to receive medically unnecessary opioid prescriptions. CHS-1 learned of POHM's location from that patient recruiter.

<u>CHS-1 Took First Patient to Priority One Health Management</u>

19.     On April 1, 2021, Special Agents provided CHS-1 with audio and video recording devices and FBI drug buy funds and tasked him/her to drive to Priority One Health Management (POHM), located in Eastpointe, MI, with another FBI confidential human source (CHS-2). Agents intended to have CHS-1 pose as a patient recruiter and bring another patient (CHS-2) into Priority One to obtain a medically unnecessary controlled substance prescription.

20.     On April 1, 2021, CHS-1 and CHS-2 entered POHM. Brandy King was sitting in a front reception office in the waiting area, behind a window. CHS-1 approached the front desk and told King that CHS-1 had brought one patient to see the doctor. King asked CHS-1 how s/he heard about POHM, and that CHS-1 would need

7

to know someone who knew about the clinic. CHS-1 told King s/he heard about the clinic from another patient recruiter.

21.    CHS-1 provided CHS-2's information to King. CHS-1 believed that King ran a Michigan Automated Prescription System (MAPS) report utilizing CHS-2's information, and that it was understood that CHS-1 was there to obtain a prescription for a controlled substance. King did not ask the patient for an MRI or any questions about medication the patient had received in the past. King asked CHS-1 which pharmacy s/he would like the prescription to be electronically sent.

22.    King brought CHS-2 into a back room. The room contained a table and chair, and on the table was a laptop. The laptop was on, and the doctor was visible on the laptop screen. The doctor introduced himself to CHS-2 as Dr. Bayolo. Dr. Bayolo asked CHS-2 for his/her name and told CHS-2 he had his/her paperwork. Dr. Bayolo asked CHS-2 about where his/her pain was located and the cause of his/her pain. CHS-2 told Dr. Bayolo his/her pain was in the back and neck, and that s/he fell down the stairs a few days prior and had also been in a car accident several years ago. At this point in the recording, King is overheard entering the room and arguing with Dr. Bayolo about the way a prescription was written for an unknown patient. King then exited the room. Dr. Bayolo apologized to CHS-2, and Dr. Bayolo waited approximately two minutes before resuming his visit with CHS-2.

23.    Dr. Bayolo asked CHS-2 again where his/her pain was located, to describe the feeling of the pain, and the frequency of his/her pain. Dr. Bayolo had CHS-2 go through a series of physical movements, including turning his/her neck, rotating his/her

8

body from side to side, and walking towards the door. Dr. Bayolo told CHS-2 he was almost done, and asked CHS-2 if s/he had an MRI. CHS-2 told Dr. Bayolo s/he had an MRI about five years ago. Dr. Bayolo asked CHS-2 if s/he had a copy of the MRI at home, and CHS-2 told him s/he was unsure if s/he still had a copy. Dr. Bayolo told CHS-2 s/he was all set and to take the medication as directed. Dr. Bayolo did not discuss with CHS-2 what kind of treatment or medication s/he was seeking and did not discuss with the patient what kind of medication he prescribed. The patient received a prescription for 90 oxycodone 30mg.

24.    After the patient's visit with Dr. Bayolo concluded, King told CHS-1 it would be $500 for the prescription. CHS-1 paid King $500 for the prescription. The prescription was sent to the pharmacy electronically. I reviewed a copy of the electronic prescription and observed the prescribing physician listed on the prescription was Dr. Juan Bayolo.

<u>CHS-1 Took Second Patient to Priority One Health Management</u>

25.    On April 5, 2021, at approximately 3:30 PM, Special Agents provided CHS-1 with audio and video recording devices and FBI drug buy funds and tasked him/her to drive to POHM with another FBI confidential human source (CHS-3). Agents intended to have CHS-1 pose as a patient recruiter and bring a patient (CHS-3) to Priority One to see Dr. Bayolo and obtain a medically unnecessary controlled substance prescription.

26.    CHS-1 and CHS-3 entered POHM. Brandy King was overheard on the recording greeting CHS-1 as s/he entered the clinic and approached the front reception

9

office area. CHS-1 told King, who sat behind the window in the front reception office area, that s/he had one new patient to see the doctor.

27.     CHS-1 asked King if his/her patient needed to provide their insurance card, which King responded they did not. King was observed on the recording utilizing a cell phone. King asked CHS-1 for his/her patient's driver's license. King informed CHS-1 that the doctor was not going to start seeing patients until 6 PM. CHS-1 told King s/he was going to leave with his/her patient and return at 6 PM when the doctor was ready. CHS-1 signed his/her patient's name on a sign-in sheet at the front desk. King assisted CHS-1's patient with filling out new patient intake paperwork and took the patient's vitals prior to CHS-1 and his/her patient departing the clinic.

28.     At approximately 6:11 PM, CHS-1 and CHS-3 returned to POHM so CHS-3 could see Dr. Bayolo. Approximately 15 minutes after CHS-1 and CHS-3 reentered Priority One, King called CHS-3 to a back room with a laptop. King was overheard on the recording introducing Dr. Bayolo to the patient. Dr. Bayolo conducted the visit with the patient virtually through the laptop. Dr. Bayolo confirmed CHS-3's name, and Dr. Bayolo told CHS-3 he was going to check his/her paperwork. Dr. Bayolo asked CHS-3 about where his/her pain was located, to describe the pain, and their pain level. Dr. Bayolo asked CHS-3 to stand and take a few steps towards the door and to touch his toes, which the patient complied. Dr Bayolo asked CHS-3 if s/he has had an MRI conducted. CHS-3 responded that s/he had an MRI awhile back but did not have a copy of the MRI with them. Dr. Bayolo concluded the visit by telling CHS-3 he would send his/her medication to the pharmacy. Dr. Bayolo did not discuss with the patient

10

what kind of treatment or medication s/he was seeking and did not discuss with the patient what kind of medication he prescribed.

29.     After CHS-3's visit with Dr. Bayolo concluded, CHS-1 asked King if his/her patient "got 90," referring to a prescription for 90 oxycodone 30mg. King told CHS-1 that CHS-3 received a prescription for 90 oxycodone 30mg, and that it would be $500 for the prescription. CHS-1 paid King $500 for the prescription. The prescription was sent to the pharmacy electronically. I reviewed a copy of the electronic prescription and observed the prescribing physician listed on the prescription was Dr. Juan Bayolo.

30.     From the recordings on April 1 and April 5, 2021, it is apparent that POHM issued controlled substance prescriptions based on a cash payment arrangement between the patient recruiters and the clinic. I am aware from similar investigations of Detroit-area pill mills that significant cash payments, such as the one made by CHS-1 to King on this date, is a drug transaction, because the payment was made for the type of drug and quantity of pills that the doctor prescribed. This type of payment arrangement in no way resembles a traditional doctor/patient relationship where a patient's insurance is billed or where a patient would be charged a nominal co-pay/office visit fee.

31.     On May 12, 2021, CHS-1, at the direction of Special Agents, brought CHS-2 and CHS-3 back to POHM to see Dr. Bayolo and receive a second prescription. On that date, CHS-2 and CHS-3 both saw Dr. Bayolo virtually and both received a prescription for 90 oxycodone 30mg. CHS-1 paid King $500 for each prescription. All CHS interactions were audio and/or video recorded.

SW_0293

32.     During one of these visits, CHS-1 was able to obtain the phone number 313-856-4473 for Brandy King. CHS-1 provided his/her number to King, and King called CHS-1's phone from 313-856-4473. CHS-1 routinely called King and received calls from King on 313-856-4473.

33.     In June 2021, Special Agents learned that POHM moved locations to Livonia, MI. Brandy King and Dr. Bayolo continued to work at POHM at its new location.

<u>Text Messages Between Brandy King and Dr. Juan Bayolo</u>

34.     In May 2022, records were obtained from Apple, Inc. via administrative subpoena indicating an Apple iCloud account associated with telephone number 313-856-4473 was an active account subscribed to by Brandy King at the address of 21486 Dequindre Road, Apartment 204, Warren, MI 48091. On July 21, 2022, United States Magistrate Judge Elizabeth A. Stafford issued a search warrant for the Apple iCloud account associated with telephone number 313-856-4473.

35.     A Special Agent trained in the processing of digital images processed the contents of the iCloud account associated with Brandy King's telephone number 313-856-4473. I reviewed the processed content and observed that King, using 313-856-4473, had frequent text messages with Dr. Bayolo, using the **Subject Telephone**, between March 2021 and July 2021, which was the timeframe Dr. Bayolo was employed at POHM. The text message conversations include discussions regarding patients and controlled substance prescriptions.

36.     The following are excerpts of the text messages from King, using 313-856-4473, and Dr. Bayolo, using the **Subject Telephone**:



37.     I believe, based on my training and experience, that when Dr. Bayolo said to King "they all must have prior history with recent treatment on their MAPS," he wanted every patient to already have a recent prescription for a controlled substance, because his intent was to prescribe the same controlled substance prescription to those patients, based on their MAPS history. Based on my training and experience, it is not

13

legitimate practice for a medical doctor to only see a patient if they have a history of receiving controlled substance prescriptions. Based on my investigations in other Detroit-area pill mills, it is common for medical doctors working at a pill mill to only prescribe a controlled substance to patients who have a recent MAPS history of receiving a controlled substance prescription in order to appear more legitimate.

38.    On May 5, 2021, Dr. Bayolo, using the **Subject Telephone**, sent the following text message to King at telephone number 313-856-4473: "I need Hugely encounter." King responded to the **Subject Telephone** with: "it's in." A review of MAPS data showed that patient Albert Huguley was issued a prescription for 90 oxycodone 30mg pills by Dr. Juan Bayolo on May 5, 2021.

39.    On July 28, 2021, Dr. Bayolo, using the Subject Telephone, had a text conversation with King at telephone number 313-856-4473 about Angelo Foster using Dr. Bayolo's name and DEA number to write fraudulent prescriptions for controlled substances. The following in an excerpt of the conversation between Dr. Bayolo and King:

SW_0296

Recipient: +13138564473 Brandy King (owner)

Good morning doctor Bayolo I'm still waiting on your call. I heard what u had to say I think u wanna give me a call so u can hear this disturb things I heard. I again I am so sorry this happened to u please give me a call

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +13138564473 Brandy King | | | |

Delivered: 7/28/2021 4:19:03 PM(UTC+0)
Read: 7/28/2021 5:02:32 PM(UTC+0)

7/28/2021 4:19:03 PM(UTC+0)

Source Info:
Production_12022589764.Extracted.zip/12022589764/587115/brandy.king8@icloud.com-
587115/messagesinicloud/Messages/MessagesInICloud.csv : 0x0 (Size: 2482164 bytes)

From: +17875876195
Recipient: +13138564473 Brandy King (owner)

What have you heard?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +13138564473 Brandy King | | | |

Read: 7/28/2021 6:45:42 PM(UTC+0)

7/28/2021 6:45:39 PM(UTC+0)

Recipient: +13138564473 Brandy King (owner)

Well someone told me that they got paper from Angelo and he has a whole office some where else he was getting calls forwarded to the office he I found out the place he got the paper made at and I have proof. Come to find out he has done this to several people

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +13138564473 Brandy King | | | |

Delivered: 7/28/2021 6:51:32 PM(UTC+0)
Read: 7/28/2021 6:51:35 PM(UTC+0)

7/28/2021 6:51:31 PM(UTC+0)

Source Info:
Production_12022589764.Extracted.zip/12022589764/587115/brandy.king8@icloud.com-
587115/messagesinicloud/Messages/MessagesInICloud.csv : 0x0 (Size: 2482164 bytes)

From: +17875876195
Recipient: +13138564473 Brandy King (owner)

If that is the case, you and Kevin need to do a police report. He is using Kevin name to verify the MAPS

| Participant | Delivered | Read | Played |
|---|---|---|---|
| +13138564473 Brandy King | | | |

Read: 7/28/2021 6:53:13 PM(UTC+0)

7/28/2021 6:53:13 PM(UTC+0)

Source Info:

SW_0297



40.     Based on a review of the entire text conversation between Dr. Bayolo and King on July 28, 2021, it is apparent that Dr. Bayolo quit working at POHM after he discovered the fraudulent prescriptions were written under his name and DEA number. King told Dr. Bayolo in the text messages that Angelo wrote the fraudulent prescriptions from a separate office location. I believe King was referring to Angelo Foster when she referenced "Angelo." On July 30, 2021, Dr. Bayolo called the Drug Enforcement Administration (DEA) Detroit Field Office and filed a complaint, stating 66 schedule II controlled substance prescriptions were fraudulently written under his name.

<u>POHM Closes, and Lincoln Park Health Management Opens</u>

41.     In August 2021, Special Agents learned that Priority One Health Management closed, and in September 2021, Special Agents became aware that Brandy King was an employee at a different clinic called Lincoln Park Health Management (LPHM), located in Lincoln Park, MI.

42.     In October 2021, CHS-1 continued to pose as a patient recruiter and took CHS-2 and CHS-3 to LPHM in Lincoln Park, MI, to obtain medically unnecessary

16

controlled substance prescriptions from the doctor at LPHM. CHS-1 paid Brandy King for the controlled substance prescriptions at LPHM in Lincoln Park.

43.   On November 17, 2021, Special Agents learned that LPHM moved yet again, from Lincoln Park, MI, to a new office located at 25900 Greenfield Road, Oak Park, MI. CHS-1 continued to pose as a patient recruiter and brought CHS-2 and CHS-3 to LPHM, now located in Oak Park, MI, to obtain medically unnecessary controlled substance prescriptions from the doctor. CHS-1 paid Brandy King for the prescriptions and had discussions with Angelo Foster about purchasing controlled substance prescriptions at LPHM in Oak Park.

Dr. Bayolo Returns to Work for LPHM

44.   In March 2022, a complaint was filed with the DEA regarding LPHM not being a legitimate pain clinic. The complainant is a cooperating witness in this investigation, and therefore will remain unnamed for the purposes of this affidavit.

45.   In February 2022, the cooperating witness (CW-1) was hired by Angelo Foster to work at LPHM as a nurse practitioner. CW-1 was able to see patients virtually through a telehealth setup. CW-1 began work at LPHM as a nurse practitioner and saw patients for a short time before ending employment with LPHM and subsequently making the complaint to DEA.

46.   When CW-1 was hired at LPHM by Foster, Foster informed CW-1 his/her collaborating physician would be Dr. Juan Bayolo. A collaborating physician is required by law in the state of Michigan for a nurse practitioner who intends to issue schedule II controlled substance prescriptions. Dr. Bayolo and CW-1 signed a Collaboration

17

Agreement on March 14, 2022. I reviewed a copy of the Collaboration Agreement provided to me by CW-1, which bears Dr. Bayolo's signature and CW-1's signature.

47.    CW-1 ended employment with LPHM on or around March 28, 2022. After CW-1 ended employment with LPHM and made the complaint to DEA, CW-1 met with Special Agents for interviews. During one of these interviews, CW-1 consented to a search of his/her cell phone. A Special Agent trained in the extraction of digital images processed the extraction of CW-1's cell phone. I reviewed the digital image of CW-1's cell phone and observed that CW-1 had text conversations with Dr. Bayolo on the **Subject Telephone** in March 2022. These text conversations included discussions regarding CW-1's employment at LPHM and concerns CW-1 had over the operations of the clinic.

48.    On March 14, 2022, Dr. Bayolo, using the **Subject Telephone**, sent the following text message to CW-1:



SW_0300

<u>CW-1 Expresses Concerns about LPHM to Dr. Bayolo on Subject Telephone</u>

49.     On or around March 24, 2022, CW-1 discovered a fake MRI in a patient file for a patient previously seen virtually by CW-1. After CW-1's visit with the patient, CW-1 confirmed with the MRI imaging company that they had no record of an MRI image being conducted on that patient and concluded the MRI report was fraudulent.

50.     On March 24, 2022, CW-1 sent Dr. Bayolo a text message to the **Subject Telephone** stating CW-1 discovered a fake MRI report in a patient's file and asked for advice as to what to do. Dr. Bayolo, using the **Subject Telephone**, sent a text message back stating, "Don't prescribe." Dr. Bayolo then sent another text message stating, "Don't see the patient back without MRI." Dr. Bayolo did not address the issue of a fake MRI report being found in a patient's file.

51.     Based on my training and experience, I am aware that doctors who prescribe medically unnecessary controlled substances usually require an MRI report to be in the patient's file at the time they prescribe the controlled substance, so it appears legitimate. Based on my involvement with investigations of other Detroit-area pill mills, I am aware that office staff at the clinics operating as pill mills will create fake MRI reports and sell them to patients and patient recruiters so the MRI report can be placed in the patient's file before seeing the doctor.

52.     On March 28, 2022, CW-1 and Dr. Bayolo had a text message conversation about not being paid by Angelo Foster for their work at LPHM. CW-1 sent Dr. Bayolo a text message to the **Subject Telephone** asking how long he has worked with them. Dr. Bayolo responded, "Just 3 months since January." Later in the

SW_0301

conversation, CW-1 sent Dr. Bayolo a text asking if he was paid through direct deposit. Dr. Bayolo responded to CW-1, "Direct deposit and Zelle."

53.     On October 14, 2022, CW-1 conducted a recorded phone conversation with Dr. Bayolo on the **Subject Telephone**. During the call, CW-1 and Dr. Bayolo discussed CW-1's previous employment with LPHM in Oak Park, MI. Dr. Bayolo told CW-1 he has not worked for "them," referring to Angelo Foster and other clinic staff, in a few months.

54.     In August 2021, I served a grand jury subpoena to Square, Inc., which is the company that owns Cash App, a peer-to-peer money transfer app, for any accounts associated with the **Subject Telephone**. In response to the subpoena, Square, Inc. provided Cash App account information associated with the **Subject Telephone**. The identity verification name on the account was "Juan C. Bayolo," and the address associated with the account was 3131 Egrets Landing Drive, Lake St. Mary, FL 32746.

55.     I reviewed the Cash App data provided by Square, Inc. for the account associated with Dr. Juan Bayolo and the **Subject Telephone.** The data showed that on February 21, 2021, five days before Dr. Bayolo began issuing controlled substance prescriptions at POHM in Eastpointe, MI, Angelo Foster sent Dr. Bayolo $900 to Dr. Bayolo's Cash App account.

56.     In September 2022, a grand jury subpoena was served to Early Warning Services, the company which owns Zelle, a peer-to-peer money transfer app, for any accounts associated with Dr. Juan Bayolo. In response to the subpoena, Early Warning

SW_0302

Services provided Zelle account information for Dr. Bayolo. The phone number associated with Dr. Bayolo's Zelle account is the **Subject Telephone**.

57.     I reviewed the Zelle account information provided by Early Warning Services for Dr. Bayolo and observed that Dr. Bayolo received a cash payment for $1,000 from a known employee of LPHM on March 24, 2022.

## PROBABLE CAUSE FOR THE SUBJECT TELEPHONE

**A.     Subject Telephone**

58.     Toll records for **Subject Telephone** for the period of February 1, 2021, through September 2022 demonstrate that **Subject Telephone** was in contact with Brandy King and Angelo Foster:

- **Subject Telephone** had approximately 138 contacts with telephone number 313-856-4473, which is a known telephone number for Brandy King;

- **Subject Telephone** had approximately 13 contacts with telephone number 313-980-4463, which is a known telephone number for Angelo Foster;

- **Subject Telephone** had approximately 72 contacts with telephone number 313-729-0689, which is a second known telephone number for Angelo Foster.

**B. The Subject Phone**

59.     Based on my training and experience, I know that the stored data in cellular telephones often is important to criminal investigations because such devices frequently are used to commit crimes and collect and store information relating to the criminal conduct engaged in by the users of such devices. For example, individuals

SW_0303

engaged in a prescription drug diversion scheme often use cellular telephones to communicate with each other regarding their ongoing activities. In addition to actual live conversations, such communications often include voice messages, text messages, and emails that are stored on their cellular phones, usually for long periods of time. Also, such individuals often use cellular telephones to store information such as names, addresses and telephone numbers for their associates involved in opioid diversion and other records relating to operating a prescription drug diversion scheme, even though such information may be in code. Moreover, such individuals commonly use their cellular telephones to take, or cause to be taken, photographs and/or video of themselves, their co-conspirators, their property, and the documents they work with.

60.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

61.    *Reasonable Execution.* As with any search warrant, I expect that these warrants will be executed reasonably. Reasonable execution will likely involve conducting an investigation at the scene of the seizure of the **Subject Telephone**. Based on my training, experience, and this investigation, I know that people generally keep their cellular telephones near them at all times, either on them or in bags they are carrying. As a result, there is probable cause to believe that Dr. Juan Bayolo will have the **Subject Telephone** with him and in his possession when agents locate him and execute this warrant. As a result, I respectfully request that the Court authorize a

22

reasonable search of the clothes that Dr. Juan Bayolo is wearing, as well as any bags or briefcases that he is carrying, at the time this warrant is executed, in order to locate and seize the **Subject Telephone** for further examination.

## **CONCLUSION**

62.    Based on the foregoing, there is probable cause to believe, and I do believe, that the **Subject Telephone**, further described in Attachment A, will contain the items set forth in Attachment B, which constitute evidence of criminal activity, fruits of crime, contraband, and/or instrumentalities of the Target Offenses.

_____

Nicholas Napolitano, Special Agent
HHS-OIG

Affidavit submitted by email and attested to
me as true and accurate by telephone consistent
with Fed. R. Crim. P. 4.1 and 4(d) before me
this __14__ day of November, 2022

_____

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: _____TiffanyPalmer_____

23

SW_0305

### Attachment A

**Subject Telephone** - The property to be searched is an AT&T cellular telephone assigned call number 787-587-6195.

SW_0306

## Attachment B

### I.   ITEMS TO BE SEIZED

All records and information described in Attachment A that constitute evidence and instrumentalities of violations of Title 21 United States Code Section 841 (Unlawful Distribution of Controlled Substances) and Title 21 United States Code Section 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances) including but not limited to:

1.     Content of all call logs, contact lists, text messages, audio files (including voicemail), emails (including those sent, received, deleted and drafted), instant messages, social media account activity (including browser history, web page logs, and search terms entered by the user), social media account content, and other electronic media constituting evidence or instrumentalities of the violations described above;

2.     Any and all photographs and/or video recordings;

3.     Information regarding the user's schedule, calendar, location (GPS), or travel from February 2021 to the present;

4.     Bank records, credit card records, banking account information, and other financial records;

5.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

6.     Evidence of the times the devices were used;

7.     Passwords, encryption keys, and other access devices that may be necessary to access the devices;

25

8.      Contextual information necessary to understand the evidence described in

this attachment, all of which constitute evidence and instrumentalities

of the violations described above.

9.      Pursuant to the execution of this search warrant, law enforcement

personnel are authorized to search Dr. Juan Bayolo's person to locate the **Subject**

**Telephone**.

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* )  Case No.  6:22-mj- 2179 | |
| A cellular telephone assigned call number ) | |
| 787-587-6195 serviced by AT&T ) | |
| ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Middle_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____11/28/2022_____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.    ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Daniel C. Irick_____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*    ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____11/14/2022 @ 1:20 pm_____

City and state:      Orlando, Florida

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: TiffanyPalmer

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

SW_0309

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

**Return**

| Case No.:<br>6:22-mj- 2179 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## Attachment A

**Subject Telephone** - The property to be searched is an AT&T cellular telephone assigned call number 787-587-6195.

**Attachment B**

I.   **ITEMS TO BE SEIZED**

All records and information described in Attachment A that constitute evidence and instrumentalities of violations of Title 21 United States Code Section 841 (Unlawful Distribution of Controlled Substances) and Title 21 United States Code Section 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances) including but not limited to:

1.   Content of all call logs, contact lists, text messages, audio files (including voicemail), emails (including those sent, received, deleted and drafted), instant messages, social media account activity (including browser history, web page logs, and search terms entered by the user), social media account content, and other electronic media constituting evidence or instrumentalities of the violations described above;

2.   Any and all photographs and/or video recordings;

3.   Information regarding the user's schedule, calendar, location (GPS), or travel from February 2021 to the present;

4.   Bank records, credit card records, banking account information, and other financial records;

5.   Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

6.   Evidence of the times the devices were used;

7.   Passwords, encryption keys, and other access devices that may be necessary to access the devices;

SW_0312

8.      Contextual information necessary to understand the evidence described in

this attachment, all of which constitute evidence and instrumentalities

of the violations described above.

9.      Pursuant to the execution of this search warrant, law enforcement

personnel are authorized to search Dr. Juan Bayolo's person to locate the **Subject**

**Telephone**.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN THE MATTER OF THE SEARCH OF:

A CELLULAR TELEPHONE ASSIGNED
CALL NUMBER 787-587-6195 SERVICED
BY AT&T

Case No. 6:22-mj-2179

**Filed Under Seal**

**IN CAMERA**

**MOTION TO SEAL APPLICATION FOR SEARCH
WARRANT, AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT, AND SEARCH WARRANT**

The United States of America respectfully moves this Court to seal the

(1) Application for a Search Warrant, (2) Affidavit in Support of an Application for

a Search Warrant, (3) Search Warrant, and (4) this Motion to Seal, and in support

thereof says as follows:

This is an ongoing investigation into prescription drug diversion scheme.

Disclosure of the contents of the documents listed above may cause the subjects of

this investigation to flee or destroy evidence and may cause persons named in the

documents to be subject to possible harassment or retaliation from the subjects of the

investigation.

WHEREFORE, the United States respectfully moves the Court to seal the (1) Application for a Search Warrant, (2) Warrant, (3) Affidavit for a Search Warrant in this matter, and (4) this Motion to Seal until further order of the Court.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ Shannon Laurie
  Shannon Laurie
  Assistant United States Attorney
  Florida Bar No.: 0102711
  400 W. Washington Street, Suite 3100
  Orlando, Florida 32801
  Telephone:   (407) 648-7500
  Facsimile:   (407) 648-7643
  E-mail: Shannon.laurie@usdoj.gov

SW_0315

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN THE MATTER OF THE SEARCH OF:

A CELLULAR TELEPHONE ASSIGNED
CALL NUMBER 787-587-6195 SERVICED
BY AT&T

Case No.6:22-mj- 2179
**Filed Under Seal**

### <u>IN CAMERA ORDER</u>

Upon the written motion of the United States of America to seal the (1) Application for a Search Warrant, (2) Affidavit in Support of an Application for a Search Warrant, (3) Search Warrant, and (4) the Motion to Seal:

The Court finds that the interests of justice require that the Application for a Search Warrant, Affidavit in Support of an Application for a Search Warrant, Search Warrant, and Motion to Seal be sealed; therefore

IT IS ORDERED that the Motion to Seal is Granted;

IT IS FURTHER ORDERED that the (1) Application for a Search Warrant, (2) Affidavit in Support of an Application for a Search Warrant, (3) Search Warrant, and (4) Motion to Seal be sealed by the Clerk of the Court until further order of the Court;

DONE AND ORDERED at ORLANDO, Florida this __14th__day of November, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copy to: AUSA Shannon Laurie

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

BY: TiffanyPalmer

2