UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No. 2022-cr-20563-JJCG–APP
                                                      Honorable Jonathan J.C. Grey

D-3 JUAN BAYOLO, M.D..
_____/

**DR. JUAN BAYOLO'S POST FIRST SUPERSEDING INDICTMENT
MOTION TO DISCLOSE ACTIVITIES BEFORE THE GRAND JURY
WITH INCORPORATED MEMORANDUM OF LAW**

DR. JUAN BAYOLO, by and through his undersigned counsel, and pursuant to *Fed. R. Crim. P.* 6(e)(3)(E)(ii) ["(E) The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter: . . . (ii) "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[]"], respectfully requests that based on the grounds set out herein, tht the Court enter an order authorizing the disclosure of the grand jury proceedings.

**A HEARING ON THIS MOTION IS REQUESTED.** At present a hearing on currently pending motions is scheduled for July 30, 2024 at 10:00 a.m. *See* Re-Notice of In Person Hearing (Doc. 150). The Court had previously set a deadline of June 28, 2024 for the filing of any additional motions. *See,* Stipulation to Continue, *Etc*. and Order Continuing, *Etc*. (Doc. 125). It is respectfully requested that this motion be heard during the July 30, 2024, or at a hearing held before trial currently scheduled for October 1, 2024.

## MEMORANDUM OF LAW

### Facts of Case

On October 27, 2022, Dr. Bayolo and the co-defendants were all charged by way of a grand jury indictment with one count of conspiring to possess with intent to distribute and distribution of Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Indictment (Doc. 1). On December 14, 2023, the First Superseding Indictment was returned by a grand jury[1]. (Doc. 120). Essentially, the defendants are charged with allegedly conspiring to illegally sell prescription drugs for cash payments at medical clinics located in the Metropolitan Detroit area, by knowingly and intentionally disbursing prescriptions for controlled narcotics purportedly outside the course of legitimate medical practice and allegedly for no legitimate medical purpose, and also for allegedly selling controlled narcotic pills without prescriptions. *See,* First Superseding Indictment (Doc. 120 at pp. 1-4, paragraphs 1-4, 7, 9). Dr. Bayolo, who at all times material to the charges alleged in the indictment lived and worked in Central Florida, only saw patients for approximately six months via video and, or by telephone during telemedicine video and telephone appointments, was initially only paid $125 an hour and then $50 a patient for his telemedicine services at these clinics, and ultimately terminated his relationship with the clinics when he did become suspicious that false prescriptions were being written, and

---

[1] We do not know if the First Superseding Indictment was returned by the same grand jury that returned the original indictment or a second grand jury, if the case was transferred to a second grand jury and if so, if it was transferred correctly.

reported his concerns to the Drug Enforcement Administration. He denies that he willfully, knowingly, and intentionally participated in any conspiracy or scheme to improperly prescribe drugs to any patient or anyone as alleged in the indictment, or otherwise, emphatically denies willfully, knowingly, and intentionally prescribing any controlled substances in an unauthorized manner, and has entered a plea of not guilty.

Given the charges alleged in both indictments, and the time frames set out in the indictments, from on or about February 2021 to November 2022, (Doc. 120, at p. 1, paragraph 1, and the date of the return of original indictment, October 27, 2022 (Doc. 1) and the First Superseding Indictment (Doc. 120), December 14, 2023, it is clear that the government began its investigation of the defendants in this case, including Dr. Bayolo, and obtained its original indictment (Doc. 1), just four months before the largely anticipated Supreme Court decision in *Ruan v. United States*, 597 U.S. 450, 142 S.Ct. 2370, 213 L.Ed.2d 706 (2022) (*Certiorari* granted on November 5, 2021[142 S.Ct. 457 (U.S. 2021)] - Opinion issued on June 27, 2022). The First Superseding Indictment (Doc. 120) was returned one and a half years after *Ruan*.

In *Ruan,* the Supreme Court discussed the different, and plainly higher burden of proof required for prosecutors to establish that a physician or other medical professional acted with the required *mens rea* to obtain a conviction for drug trafficking by illegally prescribing controlled substances. Specifically, the Supreme Court held that to convict a physician of drug trafficking based on dispensing a controlled substance not "as authorized,"

3

the Government must prove that the physician knowingly or intentionally acted in an unauthorized manner and knew or intended that his or her conduct was unauthorized, and the government cannot rely on comparisons to the good faith efforts or mental state of a hypothetical reasonable doctor, nor is it sufficient for the Government to prove that the physician acted without a legitimate medical purpose or outside the usual course of generally recognized professional practice. *See, Ruan v. United States*, 597 U.S. at 456, 464-467, 142 S.Ct. at 2376, 2381-82, 213 L.Ed.2d 706 (2022); *Id.*, 597 U.S. at 478-79, 142 S.Ct. at 2389 (Alito, J, concurring); *United States v. Kahn*[2], 58 F.4th 1308, 1314 (10th Cir. 2023) (Discussing *Ruan* decision in case originally consolidated with *Ruan* before the Supreme Court); *see also, United States v. Anderson*, 67 F.4th 755, 764-66 (6th Cir. 2023) (Post-Ruan decision by Sixth Circuit discussing Ruan holding and change in government's burden of proof in distribution cases involving medical professionals); *United States v. Orusa*, 686 F.Supp.3d 719, 727-30 (M.D. Tenn. 2023) (Granting motion for new trial based on Supreme Court's decision in Ruan's finding that failure to instruct jury, in prosecution of physician for unlawful distribution of controlled substance, that jury must find that defendant physician subjectively knew the drugs he prescribed were without a legitimate medical purpose or were beyond the bounds of professional medical practice did not amount to harmless error, even though jury was instructed on defendant's theory that he acted in good faith since the good

---

[2] The Supreme Court consolidated Dr. Kahn's appeal with that of Dr. Ruan. See, Kahn, 58 F.4th at 1311 n.1 (Noting consolidation of both appeals).

faith instruction did not reference subjective knowledge and intent, the requisite mens rea was not described as being more than carelessness or negligence, and jury was repeatedly instructed that defendant could be convicted if it concluded that he acted outside the usual course of professional medical practice, without any link to his subjective intent); *see also*, Sixth Circuit Pattern Criminal Jury Instructions, Chapter 14.00 Controlled substance Offenses, Instruction 14.02C (Dispensing or Distribution of a Controlled Substance by a Practitioner (21 U.S.C. § 841(a)(1)).

However, based on the discovery originally provided, and on information and a good faith belief, it is equally clear that the government apparently did not have a medical expert opinion to support the theory that Dr. Bayolo acted with the requisite *Ruan* intent, nor did the government have the complete patient files for either any putative expert or the grand jury to review in deciding if Dr. Bayolo's conduct fell below the *Ruan* standard. Rather, again, based on the discovery originally provided, and on information and a good faith belief, it appears that the government did not obtain the patient files until on or after November 18, 2022, almost one month after the return of the Original Indictment on October 22, 2022. *See* Original Indictment (Doc. 1). Notably, the government's medical expert's report is dated May 22, 2024, long after both the original Indictment (Doc. 1 [October 27, 2021]) and the First Superseding Indictments (Doc. 120 [December 14, 2023]) were obtained by the government. It is respectfully submitted that *sans* this critical evidence, no reasonable grand jury could have found probable cause and returned a lawful indictment arguably before the

5

*Ruan* decision (Original Indictment (Doc. 1) returned on October 27, 2023), and certainly not after the *Ruan* decision (First Superseding Indictment (Doc. 120) returned on December 14, 2023). As such, it is respectfully submitted that there is a particularized need for the defense to have access to the grand jury materials requested below to determine if a motion should be filed to dismiss the current operative charging pleading, the First Superseding Indictment (Doc. 120). It is also respectfully submitted that the need for this disclosure of otherwise secret grand jury materials is greater than the need for continued secrecy, and this request is structured to minimize the disclosure and cover only the materials that are needed. *See, Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 221, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), *citing, United States v. Procter & Gamble Co.,* 356 U.S. 677, 681-682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (*Douglas* Court noting that in *Proctor and Gamble* Supreme Court "sought to accommodate the competing needs for secrecy and disclosure by ruling that a private party seeking to obtain grand jury transcripts must demonstrate that "without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done.") and, *Dennis v. United States*, 384 U.S. 855, 872, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966) (Various factors, including recognition of growing realization that disclosure rather than suppression of relevant materials ordinarily promotes proper administration of criminal justice, and fact that government had conceded that importance of preserving secrecy of grand jury minutes was minimal. . ."); *Fed. R. Crim. P.* 6(e)(3)(E)(ii).

***Request for Information About Grand Jury Proceedings Pursuant to Fed. R. Crim. P. 6***

Given the timing and manner in which this investigation appears to have been conducted, the possible circumvention of the holding in *Ruan,* the evidence provided to date regarding Dr. Bayolo, and other factors, the following grand jury materials from both the proceedings leading to the return of the original Indictment (Doc. 1) and the First Superseding Indictment, (Doc. 120) are hereby requested:

> Preparation and disclosure of the transcripts of all matters occurring before the grand jury other than deliberations by the grand jurors, related to the return of the original Indictment (Doc. 1) and the First Superseding Indictment (Doc. 120) in this case, including 1- the transfer (if applicable) of the investigation of this case from one grand jury to another; 2- the return of documents to the grand jury by the government agent appointed as the custodian of all records subpoenaed under the authority of the grand jury; 3- all exhibits and/or evidentiary items exhibited to the grand jury.

To the extent that the government intends to claim any privilege based on any ongoing investigation or grand jury secrecy requirements pursuant to *Fed. R. Crim. P.* 6(e) as a basis for refusing to provide the requested information, it is requested that any such materials be identified and submitted to the Court for review and a final determination on production. *See e.g., United States v. Claudio ,*44 F.3d 10, 14 (1st Cir. 1995) ("[G]rand jury testimony can be made available under Rule 6 based on all kinds of circumstances[][and]"[t]he idea that general safeguards against wide-ranging discovery like the Jencks Act and Rule 6 would be sufficient to justify a conviction on secret evidence is patently absurd."); *see and compare generally, Pennsylvania v. Ritchie,* 480 U.S. 39, 56-58, 107 S.Ct. 989, 1001-02, 94 L.Ed.2d 40 (1987) (Defendant charged with child abuse was entitled to have Pennsylvania Children and, Youth

7

Services file reviewed by trial court to determine whether file contained information that probably would have changed outcome of his trial, and if trial court makes such a finding, defendant entitled to new trial); *United States v. Agurs,* 427 U.S. 97, 106, 96 S.C. 2399, 49 L.Ed.2d 342 (1976) (While there is no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the defense makes a specific request for certain documents and information, and the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, the prosecutor ***must*** respond either by furnishing the information or by submitting the problem to the trial judge).

## LAW

*Fed. R. Crim. P.* 6(e) codifies the long standing policy that grand jury proceedings should be and remain secret, and prohibits the disclosure of grand jury material except in the limited circumstances provided for in Rule 6(e)(3). *See*, *In re Grand Jury Subpoenas*, 454 F.3d 511, 521 (6th Cir. 2006) ("It has long been recognized that grand juries require a generous zone of secrecy in order to perform their investigative functions").

> It has long been a policy of the law that grand jury proceedings be kept secret.... The English rule of grand jury secrecy has been incorporated into our federal common law and remains an integral part of our criminal justice system. In *Douglas Oil*, the Supreme Court summarized the reasons for, and interests served by, grand jury secrecy as follows: (1) if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony; (2) witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements; (3) [t]here ... would be the risk that those about to be indicted would flee; (4) there would be the risk that those about to be indicted "would try to influence individual grand jurors to vote against indictment; and

>(5) by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*United States v. Aisenberg,* 358 F.3d 1327, 1346 (11th Cir.), *cert. denied,* 543 U.S. 868, 125 S.Ct. 276, 160 L.Ed.2d 115 (2004) (internal quotation marks and citations removed), *quoting, Blalock v. United States,* 844 F.2d 1546, 1555 (11th Cir.1988), *citing*, *Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 218 n. 9, 99 S.Ct. 1667, 1672 n. 9, 60 L.Ed.2d 156 (1979). "That secrecy, however, is not absolute." *In Re Grand Jury 89-4-72,* 932 F.2d 481, 483 (6th Cir. 1981), *cert. denied sub nom, Michigan Attorney Grievance Commission v. Doe,* 502 U.S. 958, 112 S.Ct. 418, 116 L.Ed.2d 438 (1991). There are exceptions to the grand jury secrecy rule, including those specifically cabined in *Fed. R. Crim. P.* 6 (e)(3). The Rule 6(e)(3) exception applicable to this request is Rule 6(e)(3)(E)(ii), which, permits disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."

Also, while Rule 6(e)(3) lists the exceptions to the general rule of grand jury secrecy, courts have recognized that District Courts have their own inherent authority to disclose grand jury material that goes beyond the strict wording of Rule 6(e)(3). *See, Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 398-99, 79 S.Ct. 1237, 1240-41, 3 L.Ed.2d 1323 (1959) ("Petitioners concede, as they must, that any disclosure of grand jury minutes is covered by Fed. Rules Crim. Proc. 6(e) . . . In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial

judge."); *United States v. Fox,* 520 F.Supp.3d 904, 906 (W.D. Michigan 2021) (Where a particularized need for disclosure of grand jury material has been demonstrated, a District Court that is properly seized of the question is given wide discretion to decide whether it is the need for secrecy that predominates, or the need for disclosure); *United States v. Claudio*, 44 F.3d at 14 ("[G]rand jury testimony can be made available under Rule 6 based on all kinds of circumstances.").

Enough said. This Court should enter an order requiring the government to provide the information and material requested in this motion.

## Certification of Counsel

Defense Counsel hereby certifies pursuant to the Pretrial Discovery Order and the Local Rules, that counsel for the parties have been unable to adequately resolve the issues raised in this motion by agreement.

## CONCLUSION

THEREFORE, it is respectfully requested that this Court hold a hearing on this motion, and that this Court enters an order requiring the government to disclose the requested information regarding the grand jury proceedings in this case.

RESPECTFULLY SUBMITTED, this June 27, 2024.

| H. MANUEL HERNÁNDEZ, P.A.<br><br>*/s/ H. Manuel Hernández*<br>H. Manuel Hernández<br>Florida Bar No. 0775843<br>620 East Club Circle<br>Longwood, FL 32779<br>Telephone: 407-682-5553<br>E-mail: manny@hmh4law.com<br>For Defendant Juan Bayolo, M.D. | JOHN W. BRUSSTAR<br><br>*/s/ John W. Brusstar*<br>(P36920)<br>Co-counsel for Defendant<br>18530 Mack Avenue, Ste 535<br>Grosse Pointe, MI 48236<br>(313) 268-6888<br>johnbrusstar@yahoo.com<br>For Defendant Juan Bayolo, M.D. |

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this June 27, 2024, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all parties on record which will send it to their respective clients. I further certify that I sent the foregoing and the notice of electronic filing by e-mail, or mail to the following non-CM/ECF participants: Dr. Juan Bayolo.

*/s/ H. Manuel Hernández*
H. MANUEL HERNÁNDEZ

## TABLE OF CITATIONS

**CASES**

*Blalock v. United States,* 844 F.2d 1546 (11th Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) . . . . . . . . 6

*Douglas Oil Co. of Cal. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667,
  60 L.Ed.2d 156 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*In Re Grand Jury 89-4-72,* 932 F.2d 481 (6th Cir. 1981), *cert. denied sub nom*. . . . . . . . . 9

*In re Grand Jury Subpoenas*, 454 F.3d 511 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Michigan Attorney Grievance Commission v. Doe,* 502 U.S. 958, 112 S.Ct. 418,
  116 L.Ed.2d 438 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) . . . . . . . . . . 7

*Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237,
  3 L.Ed.2d 1323 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ruan v. United States*, 597 U.S. 450, 142 S.Ct. 2370,
  213 L.Ed.2d 706 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 7

*Ruan v. United States*, 597 U.S. 450, 142 S.Ct. 2370, 213 L.Ed.2d 706 (2022) . . . . . . . . 3

*United States v. Agurs,* 427 U.S. 97, 96 S.C. 2399, 49 L.Ed.2d 342 (1976) . . . . . . . . . . . 8

*United States v. Aisenberg,* 358 F.3d 1327 (11th Cir.), *cert. denied,* 543 U.S. 868,
  125 S.Ct. 276, 160 L.Ed.2d 115 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Anderson*, 67 F.4th 755 (6th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Claudio* ,44 F.3d 10 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Fox,* 520 F.Supp.3d 904 (W.D. Michigan 2021) . . . . . . . . . . . . . . . . . . 10

*United States v. Kahn*, 58 F.4th1308 (10th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Orusa*, 686 F.Supp.3d 719 (M.D. Tenn. 2023) . . . . . . . . . . . . . . . . . . . . 4

*United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983,
  2 L.Ed.2d 1077 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**STATUTES**

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**RULES**

*Fed. R. Crim. P.* 6(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Fed. R. Crim. P.* 6(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Fed. R. Crim. P.* 6(e)(3)(E)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 9