UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Criminal No. 22-CR-20563 |
| | Honorable Johnathan J.C. Grey |
| Plaintiff, | |
| v. | |
| D-3, JUAN BAYOLO, MD., | |
| D-4, RENE GONZALEZ GARCIA, M.D., | |
| Defendants. | |
| _____/ | |

**GOVERNMENT'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT TESTIMONY OF DR. BERLAND, REQUEST FOR DAUBERT HEARING, AND ADDITIONAL DISCOVERY [ECF Nos. 165, 174]**

The United States files this opposition to defendants Dr. Juan Bayolo and Dr. Rene Gonzalez Garcia's motion to exclude or limit the testimony of Dr. Berland as an expert witness and for a *Daubert* hearing (ECF Nos. 165, 174).

Dr. Berland is a board-certified medical doctor specializing in pain management. The United States has identified Dr. Berland as an expert witness to render an opinion on whether the defendants prescribed controlled substances in the usual course of professional practice and for a legitimate medical purpose. The Court should permit Dr. Berland to testify, as his testimony would be reliable, assist the trier of fact, and satisfy all the requirements of *Daubert* and the Federal

1

Rules of Evidence. Therefore, the Court should deny the defendants' motion because Dr. Berland's qualifications and anticipated testimony comply with the requirements of *Daubert* and the Federal Rules of Evidence.

In addition, the defendants are not entitled to additional discovery because the Government has fully complied with its obligations under the Federal Rules of Criminal Procedure with respect to its disclosure of the expert witness. Therefore, the Court should deny the defendants' request for additional discovery.

## I. BACKGROUND

The first superseding indictment alleges that, from February 2021 through November 2022, Drs. Bayolo and Gonzalez Garcia conspired with others to distribute prescription drug controlled substances. As part of the conspiracy, clinics were organized and operated at different times and in different locations within the metro Detroit area. These included Priority One Health Management, Lincoln Park Health Management, Better Health Medical Services, and others. Drs. Bayolo and Gonzalez Garcia knowingly prescribed controlled substances outside the usual course of their professional practice and for no legitimate medical purpose, in furtherance of the scheme. Drs. Bayolo and Gonzalez Garcia primarily electronically prescribed oxycodone, oxymorphone, oxycodone-acetaminophen, and hydrocodone-acetaminophen—drugs that are in high demand on the illegal street market and among the most abused and diverted. They did so primarily from

outside the State of Michigan after cursory remote "visits" with the purported patients.

As part of its case-in-chief, the Government intends to call Dr. Daniel Berland, M.D. as an expert witness to support the charges against the defendants. The Government has provided the defendants with Dr. Berland's seven-page report outlining, inter alia, the materials he reviewed and the opinions he is prepared to render as to whether the prescribing of controlled substances by the defendants was consistent with the usual course of medical practice and whether it was for legitimate medical purposes.

The defendants now move to exclude or limit the testimony of Dr. Berland claiming he does not satisfy the *Daubert* standard required to render an expert opinion. Specifically, the defendants argue that Dr. Berland lacks qualification and credentials in the field of telemedicine; relied on medical records that contained false information; combined the two doctors when rendering his opinion; and improperly offered an opinion about whether the defendants did or did not have a mental state or condition that constitutes an element of the crime charged in violation of Fed. R. Evid. 704(b).

For the reasons that follow, the defendants' claims are without merit. Dr. Berland's findings and conclusion are based upon more than 25 years of experience using well-established medical practices in the treatment of patients

suffering from chronic pain and addiction. The defendants' claims go to the weight of Dr. Berland's opinions, not their admissibility, and therefore, are properly reserved for his cross-examination.

## II.  ARGUMENT

Federal Rule of Evidence 702 allows the admission of testimony by a witness qualified as an expert "by knowledge, skill, experience, training or education." An expert may provide testimony that (1) is based on sufficient facts or data, (2) is the product of reliable principles and methods, and (3) reflects reliable application of those principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 provides an expert "may give opinion testimony if it 'will assist the trier of fact to understand the evidence to determine a fact in issue.'" *United States, v. Johnson*, 488 F.3d, 690, 698 (6th Cir. 2007). The "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes for 2000 Amendments.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592 (1993), the foremost case interpreting Fed. R. Evid. 702, the United States Supreme Court held that "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact at issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the

testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." In making its determination, a district court may consider several factors, including the following: 1) whether the technique used by the expert can be, or has been tested; 2) whether the technique has been subjected to peer review or publication; 3) the known or potential rate of error of the method used; 4) whether there are standards controlling the technique's operation; and 5) whether the technique has been generally accepted within the relevant community. *Id*. at 593-594.

While useful in assisting in a court's determination, these factors are not exhaustive or inflexible. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Court noted that *Daubert* held the test of reliability is "flexible," and *Daubert*'s list of specific factors does not necessarily or exclusively apply to all expert testimony in every case. Rather, the trial court enjoys broad latitude when it determines reliability in respect to its ultimate determination. *Id.* at 141-142. To that end, the purpose of the district court's gatekeeper role is to draw the line between junk science and legitimate methods. *United States v. Lang*, 717 Fed. App'x 523, 533 (6th Cir. 2017) (citing *Daubert* 509 U.S. 579, 589-90).

Moreover, the Court's gatekeeper role under *Daubert* is not intended to supplant the role of the jury in our adversarial system. *Wellman v. Norfolk & Western Railway Co.*, 98 F. Supp. 2d 919, 924 (S.D. Ohio 2000) (citing *Daubert*,

5

509 U.S. at 596). Instead, its purpose is "to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion and its lack of probative value." *Id*. Accordingly, the traditional and appropriate means of attacking shaky but admissible evidence is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lang*, 717 Fed. App'x at 534 (citing *Daubert*, 509 U.S. at 596).

### A. Dr. Berland is Qualified to Offer Expert Opinion Testimony Consistent with His Report.

Dr. Berland is a well-qualified pain management specialist who has been exclusively treating patients with chronic pain for over 25 years. He is currently on the medical staff at the University of Michigan where he continues to treat patients with chronic and severe pain issues and is an Emeritus Associate Professor of Medicine. Dr. Berland has published several articles on managing acute and chronic pain with opioid therapy and has been a presenter at various seminars where the focus was the treatment of chronic pain with opioid therapy. Moreover, Dr. Berland has testified on numerous occasions as a pain management expert in several criminal cases.

In rendering his opinion, Dr. Berland relied on universally accepted standards of care, including, those in place during the COVID-19 pandemic. The standards include, inter alia: 1) spending a suitable amount of time with the patient

and performance of a targeted physical examination to determine an objective medical diagnosis; 2) appropriate use of prescription drug monitoring data (PDMP); 3) appropriate use of urine drug testing; 4) counseling of patients about the risks associated with opioid therapy; 5) appropriate use of telemedicine during the COVID-19 pandemic; and 6) security protocols utilized for e-prescribing.

In addition to accepted medical standards, Dr. Berland relied on his own medical expertise in reviewing the medical records and rendering his opinion, including his experience treating patients via telemedicine during the COVID-19 pandemic. Courts have found it appropriate for a physician to give opinion testimony based on experience and patient files reviewed by the physician. *Lang*, 717 Fed. App'x at 534. In *United States v. Stapleton*, 2013 WL 3967951 *6 (E.D. KY July 31, 2013) (unpublished), the court specifically found that a physician's extensive experience in pain management is " ...a reliable basis for defining a normal range of treatment against which he may compare the defendants' prescription patterns."

Dr. Berland reviewed numerous undercover recordings of telemedicine visits with Drs. Bayolo and Gonzalez Garcia. Dr. Berland will testify the videos he reviewed were sufficient for him to render an opinion about the appropriateness of telemedicine conducted by the defendants.  In his report, Dr. Berland noted his findings when a patient note indicated a physical examination occurred that could

7

not be plausible during a telemedicine visit, and that telemedicine visits did not occur in a medical setting.

The Government anticipates Dr. Berland will testify that the expansion of telemedicine during the COVID-19 pandemic did not alter the requirements that a prescription must be issued in the usual course of professional practice and for a legitimate medical purpose. Clearly, Dr. Berland is well qualified to testify about the appropriateness of telemedicine when issuing controlled substance prescriptions.

### B. Dr. Berland's Testimony Is the Product of Reliable Principles and Methods.

In criminal cases, expert testimony is admissible to establish the "generally acceptable standards of medical practice for issuing prescriptions." *United States v. Kirk*, 584 F.2d 773, 785 (6th Cir. 1978), *cert. denied*, 439 U.S. 1048. "Expert testimony on whether prescriptions are medically appropriate has long been the norm in controlled substances prosecutions." *Lang* at 534 (citing *United States v. Word*, 806 F.2d 658, 662-64 (6th Cir. 1986) (expert testimony on "legitimate medical purpose" and "in the course of professional practice" highly relevant and reliable); *United States v. Hughes*, 895 F.2d 1135, 1144-45 (6th Cir. 1990)); *see also United States v. Volkman*, 736 F.3d 1013, 1022-24 (6th Cir. 2013), *vacated on other grounds*, 135 S. Ct. 13 (2014); *accord United States v. Bartee*, 479 F.2d 484, 488 (10th Cir. 1973). The government's expert witnesses will provide testimony

that is "not only relevant, but reliable." *Daubert* 509 U.S. at 589-90; *see also Kumho* 526 U.S. at 140 (*Daubert* standard applies to all expert testimony, not just scientific testimony). Dr. Berland's testimony meets the applicable preponderance of evidence standard for admissibility because he is qualified by extensive medical education and experience and relied upon the individual patient files of the various clinics in forming his opinions.

 Fed. R. Evid. 702(b) requires the expert's testimony to be based on "sufficient facts or data." A court deciding reliability does not determine whether the testimony is correct; rather, a court determines whether the testimony rests upon a reliable foundation as opposed to unsupported speculation. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2008). The Government anticipates that Dr. Berland will testify that the patient files and undercover recordings he reviewed were sufficient to render an opinion as to the care afforded by the clinic in question to that particular patient and whether the prescriptions issued were for a legitimate medical purpose.

 The defendants challenge the reliability of the 91 patient files reviewed by Dr. Berland and contend they contain false information. The medical records in this case were obtained through subpoena and search warrant returns from Practice Fusion. In each clinic, the staff along with the doctors were allowed to make entries into the record, which is a common practice at most medical clinics. Even if

the defendant disagrees with Dr. Berland's conclusion, testimony based on allegedly incomplete or inadequate information is a proper subject for cross-examination or the presentation of contrary evidence. *Daubert,* 509 U.S. at 596. "Incomplete bases for the expert testimony are subject to the crucible of cross examination and affect the weight properly given to the scientific or medical evidence, not the admissibility of such information at trial." *Laski v. Bellwood*, 132 F.3d 33, 1997 WL 764416 at *4, (6th Cir. Nov. 26, 1997) (unpublished).

Defendants further challenge the reliability of the report by arguing that Dr. Berland conflated his opinions by combing the conduct of both doctors. Dr. Berland provided a narrative of the defendants' practices and prescribing patterns separately and jointly.  While the defendants practiced at various clinics at various times, the same patients travelled from clinic to clinic and were issued prescriptions for controlled substances by both defendants. Therefore, because both doctors often prescribed to the same patient, Dr. Berland, when appropriate noted similar conduct and prescribing practices for both physicians.

Dr. Berland in his report appropriately combined both doctors when it was factually relevant, and he noted when the doctors would prescribe outside the course of legitimate medical practice and for no legitimate medical purpose separately as well. Accordingly, the defendants' reliance on *Daubert* in this case is misplaced.

### C. Dr. Berland's Testimony is Relevant and Addresses the Ultimate Issue at Trial.

Dr. Berland will testify about the key issue at trial: whether or not the opioid prescriptions issued by Drs. Bayolo and Gonzales Garcia were outside professional practice and for a legitimate medical purpose. There is little evidence that could be more relevant. When analyzing the relevance of proposed testimony, the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case. *Stapleton* at *3. In particular, expert testimony is helpful to the trier of fact in these types of cases, because jurors are not well versed on the standards of legitimate professional practice and for a legitimate medical purpose. *Id.*

The defendants argue that it is impermissible for Dr. Berland to opine that the prescriptions issued by the defendants were written outside the usual course of professional practice and not for a legitimate medical purpose. The defendants contend that such opinion is the "ultimate legal conclusion" and must be precluded. The defendants are incorrect on the law and the facts.

As a general rule, an expert witness may state an opinion regarding the ultimate issue in the case. While an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), expert witnesses in criminal cases "must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime

11

charged." Fed. R. Evid. 704(b). Determining the defendant's mental state or other elements of the crime "are matters for the trier of fact alone." *Id.* Fed. R. Evid. 704(a).

Dr. Berland's testimony does not contain a legal conclusion because he opines about the usual course of professional practice and the legitimate medical purpose for prescribing controlled substances. The Sixth Circuit has consistently held that "an opinion on the legitimate medical purpose for prescriptions 'does not carry with it a 'separate, distinct and specialized meaning' from its medical counterpart" and thus may be admitted. *United States v. Taylor*, 643 F.Supp.3d 731, 740 (E.D. Ky. 2022) (citing *United States v. Volkman*, 797 F.3d 377, 389 (6th Cir. 2015)); *see also Kirk*, 584 F.2d at 785 (allowing testimony relating to the "generally acceptable standards of medical practice for issuing prescriptions").

Under the law, licensed doctors may issue prescriptions for controlled substances for legitimate patients who have a medical need for the drugs. *See* 21, Code of Federal Regulations, § 1306.04. In this case, Dr. Berland will testify that the prescriptions issued by Drs. Bayolo and Gonzalez Garcia were written outside the usual course of professional practice and without a legitimate medical purpose. The unauthorized prescriptions are the first step in bringing the physician defendant under the criminal prohibitions of Title 21 U.S.C. § 841(a)(1). In this regard, Dr. Berland's testimony is not objectionable.

### D. The Defendants Are Not Entitled to Additional Discovery.

Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) mandates the disclosure of expert witness information. The disclosure for each expert witness must contain:

- a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition. *Id.*

The Government has fully complied with this mandate and produced the required information to the defendants. The defendants now seek additional information, specifically, all payments made to Dr. Berland in this case, all payments made to Dr. Berland by the government for any case in the last four years, all documents related to any case Dr. Berland has worked on for the government where the government did not use him as an expert, all documents related to the individual(s) who selected the patient files for Dr. Berland to review, and documentation related to complaints regarding Dr. Berland.

While the defendants are entitled to the payments Dr. Berland received in this case, which will be produced in advance of trial, the remaining requests far exceed what the government is required to produce under Rule 16. Therefore, the defendants' request for additional discovery should be denied.

### E. A *Daubert* Hearing Is Not Necessary.

The Sixth Circuit has repeatedly emphasized that a district court "is not required to hold an actual hearing to comply with *Daubert*," and that the decision about whether to hold such a hearing falls firmly within the district court's discretion. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001). Where a district court opts not to hold a *Daubert* hearing, the court may satisfy its gatekeeping role by "keep[ing] watch over the proceedings, and, with the aid of objections from [counsel], eliminat[ing] methodologically unsound or irrelevant expert testimony." *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 F. App'x 479, 484 (6th Cir. 2002).

A *Daubert* hearing is not necessary, because the parties fully briefed the Court, and the Court has an adequate basis on which to decide the admissibility of the testimony. *See United States v. Taylor*, 643 F. Supp. 3d at 743. Several courts have permitted Dr. Berland, and other physicians like him, to testify on the same issues that he will opine on in Drs. Bayolo and Gonzalez Garcia's trial. This brief lays out specifically how Dr. Berland and his proposed testimony meet the *Daubert*

14

standard and every factor governing the admission of opinion testimony. The government has, therefore, met its burden by a preponderance of the evidence. *See Vaughn v. Konecranes, Inc.*, 642 F. App'x 568, 577 (6th Cir. 2016).

## III. CONCLUSION

For the preceding reasons, the Government respectfully requests that the Court determine that Dr. Berland's testimony is admissible under *Daubert* and the relevant Federal Rules of Evidence. Additionally, the Government respectfully requests this Court deny the defendants' motion without a *Daubert* hearing.

                          Respectfully Submitted,

                          DAWN N. ISON
                          United States Attorney

                          *s/ Regina R. McCullough*
                          Regina R. McCullough
                          Lisandra Fernandez-Silber
                          Assistant United States Attorneys
                          211 Fort Street, Suite 2001
                          Detroit, MI 48226
                          (313) 226-9618
                          Regina.McCullough@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                        *s/Regina R. McCullough*
                        Regina R. McCullough
                        Assistant United States Attorney
                        211 Fort Street, Suite 2001
                        Detroit, MI 48226
                        (313) 226-9618
                        Regina.McCullough@usdoj.gov