UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,                    Criminal No. 22-CR-20563
                                             Honorable Johnathan J.C. Grey

    Plaintiff,

v.

D-3, JUAN BAYOLO, MD.,
D-4, RENE GONZALEZ GARCIA, M.D.,

    Defendants.

_____/

## GOVERNMENT'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OTHER ACTS UNDER FED. R. EVID. 404(b) [ECF No. 169]

The United States files this opposition to defendants Drs. Juan Bayolo and Rene Gonzalez Garcia's motion in limine to exclude evidence of other acts under Federal Rule of Evidence 404(b).

The defendants seek to exclude from evidence at trial their prescribing patterns that are specifically referenced in the indictment, highly relevant to proving essential elements of the crime, and are routinely admitted at trial in this type of case. The government submits that the defendants' motion should be denied because the evidence they seek to exclude is intrinsic evidence related to the defendants' unlawful prescribing of controlled substance prescriptions and does

1

not fall within the category of other acts evidence as defined in Federal Rule of

Evidence 404(b).

## I. BACKGROUND

The first superseding indictment alleges that, from February 2021 through

November 2022, Drs. Bayolo and Gonzalez Garcia conspired with others to

distribute prescription drug controlled substances. As part of the conspiracy, clinics

were organized and operated at different times and in different locations within the

metro Detroit area. These included Priority One Health Management, Lincoln Park

Health Management, Better Health Medical Services, and others. Drs. Bayolo and

Gonzalez Garcia knowingly prescribed controlled substances outside the usual

course of their professional practice and for no legitimate medical purpose, in

furtherance of the scheme.

To accomplish the goals of the conspiracy, Drs. Bayolo and Gonzalez Garcia

utilized the MDToolbox e-prescribing software and Practice Fusion, a cloud-based

electronic health record, to electronically prescribe oxycodone, oxymorphone,

oxycodone-acetaminophen, and hydrocodone-acetaminophen—drugs that are in

high demand on the illegal street market and among the most abused and diverted.

They did so primarily from outside the State of Michigan after cursory remote

"visits" with the purported patients or without any visit taking place.

In order to issue and electronically-prescribed controlled substance (EPCS) prescription, the DEA requires a two-factor authentication sign-off by a licensed prescriber. Each prescriber who wishes to e-prescribe controlled substances must go through an identity proofing and authentication process in order to receive a token. The token is necessary to complete the two-factor authentication.

Each company maintains certain datapoints related to each EPCS. Some of the datapoints include: patient name; provider name; type and quantity of controlled substance; date, time, and IP address of provider logins; date, time, and IP address for the two-factor authentication; approved electronic devices utilized to obtain two-factor authentications; date, time, and IP address of providers electronically issuing prescriptions; and date and time when the prescriptions are received by the pharmacies. In response to either warrants or subpoenas, the above-mentioned data was exported and rendered in Microsoft Excel format. The Government then produced the various spreadsheets to defense counsel.

The defendants also had access to the prescription data contained within the Michigan Automated Prescription System (MAPS) prior to issuing controlled substance prescriptions electronically. The Board of Pharmacy Administrative Rules 338.3162b and 338.3162d state that all pharmacies, dispensing practitioners, and veterinarians who dispense controlled substances in Schedules 2-5 are required to electronically report prescription data to MAPS. They are required to report

3

patient data, prescriber's name and DEA number; the type and quantity of controlled substances; date each prescription is written and filled; and the pharmacy name and DEA number. The MAPS system is monitored by the State of Michigan through the Bureau of Licensing and Regulatory Affairs (LARA). LARA ensures that each provider is compliant with State law, which requires a prescriber to be registered with MAPS prior to prescribing a controlled substance to a patient, and the prescriber must run and review a patient's MAPS report prior to prescribing or dispensing a controlled substance in a quantity that exceeds a 3-day supply. The MAPS reports for Drs. Bayolo and Gonzalez-Garcia were obtained by the Government. The above-mentioned data was also rendered into a Microsoft Excel format, and the spreadsheets were produced to the defendants.

The defendants' claim the information contained in the "digital data will have little or nothing to do with the prescriptions and acts related to Dr. Bayolo … [a]s such this type of purported collateral other acts evidence is irrelevant and inadmissible . . . ." Defendant's Motion (ECF No. 169, PageID.837).

The defendants' overall prescribing methods are directly relevant to prove required elements of the charged offenses, specifically, that the defendants acted knowingly or intentionally, and the prescriptions were issued outside the usual course of professional practice and for no legitimate medical purpose.  The evidence from MDToolbox, Practice Fusion, and MAPS, is relevant to prove

4

criminal intent, and refutes the notion that prescriptions were issued in an authorized manner.

## II.   ARGUMENT

### A.   Evidence of the defendants' prescribing practices is relevant to prove the defendants acted knowingly or intentionally.

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.  *United States v. Collins*, 799 F.3d 554, 577-78 (6th Cir. 2015) (citing Fed. R. Evid. 401).

Drug distribution charges against licensed medical professionals require proof beyond a reasonable doubt that the defendant knowingly or intentionally distributed a controlled substance. In *Ruan v. United States*, 597 U.S. 450, 468 (2022) the Supreme Court held that Section 841's mens rea, "knowingly and intentionally," applies to the "except as authorized" exception. "Meaning that, after a defendant produces evidence of authorization, the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Oppong v. United States*, 2024 WL 474395 *2 (6th Cir. Feb. 7, 2024) (unpublished).

Relying on *Ruan*, the court in *Oppong* noted, "[t]he Government, of course, can prove knowledge of a lack of authorization through circumstantial evidence"

and through reference to the objective criteria that defines authorization: "legitimate medical purpose" and the "usual course" of "professional practice." *Id.* at \*6 (quoting *Ruan*, 597 U.S. at 467).

The Government intends to introduce evidence related to the electronic prescribing because it will demonstrate the prescriptions were not issued in an authorized manner and will show the defendants' overall prescribing patterns through statistical analysis. The evidence will also establish the defendants obtained the two-factor authentication on a device registered to them and knowingly issued the prescriptions from either Florida, Nevada, or Arizona. The evidence will directly refute their claims that someone else issued the prescriptions in their name or that the prescriptions were issued in an authorized manner.

The Sixth Circuit has repeatedly recognized the relevance of statistical evidence about a doctor's prescribing patterns.  For example, in *United States v. Kirk*, 584 F.2d 773, 778 (6th Cir. 1978), a survey of about 200 drug stores in one county revealed that an "unnecessarily large quantity" of controlled substances were written by the defendant doctor—about 90% of Schedule II prescriptions filled in a typical pharmacy. The court found this testimony "most damaging," and rejected a claim that the evidence was insufficient to sustain a conviction. *Id.*

Similarly, in *United States v. August*, 984 F.2d 705 (6th Cir. 1992), a podiatrist was charged with possession with intent to distribute controlled

substances, specifically, prescription cough syrup.  The investigators found that the

defendant's total purchases were double those of the average United States

pharmacy; fifty-five times larger than the purchases of the average United States

physician in 1987; seventy-six times larger than the purchases of the average

doctor in 1988; and seventy-one times greater than those of the average doctor in

1989. His purchases of hydrocodone were four times as great as those of the

average United States hospital. The defendant purchased ninety-nine percent or

more of the hydrocodone sold to podiatrists in Michigan in each of the years 1987

through 1989.  *Id.* at 708. In rejecting the sufficiency of evidence claim, the court

noted that the jury could infer an illegal intent to distribute from this evidence. *Id.*

at 713.

In *United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014), the evidence was

held sufficient to convict owners of pain-management clinics. That evidence

included the fact that one of the doctors the defendants employed at their clinic

was the state's number one prescriber of hydrocodone in 2006 and 2007. And by a

wide margin: In 2006, she prescribed 147,000 dosage units of the drug, almost

107,000 more units than Ohio's next most prolific prescriber.  In 2007, the doctor

prescribed 62,400 dosage units, while the second-place prescriber doled out

19,650.  *Id.* at 589.  *See also United States v. Volkman*, 736 F.3d 1013, 1018 (6th

Cir. 2013) (affirming the criminal conviction and sentence of a doctor while citing

purchases of oxycodone of 135,900 dosage units in 2003; 457,100 dosage units in 2004; and 414,200 dosage units in 2005); *United Staes v. Iwas*, 2023 WL 6702114 *6 (E.D. Mich. Oct. 12, 2023) (unpublished) (holding statistical MAPS data is probative of knowledge or intent as to whether the defendant distributed controlled substances and whether the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose).

Courts evaluating sufficiency of the evidence claims do not directly declare that general practice evidence is relevant. But using such evidence to uphold criminal convictions of doctors and pharmacists confirms its indisputable relevance. Evidence related to the defendants' electronic prescribing is relevant to establish whether defendants issued and transferred the prescriptions knowing or intending that they were unauthorized and should not be excluded.

**B.     Evidence Regarding the defendants' prescribing is intrinsic to the crimes charged and therefore is not subject to Rule 404(b).**

Rule 404(b) applies to evidence of wrongful acts which are extrinsic to the charged offense.  Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

The defendants claim the Government may seek to introduce, without proper notice, "evidence of arguably other purported bad acts involving prescribing controlled substances by Dr. Bayolo in Michigan or elsewhere, prescribing controlled substances by others purportedly under the supervision of Dr. Bayolo, [and] prescribing controlled substances by others purportedly with authorization by Dr. Bayolo allowing them to use his prescriber's information . . . ." (ECF No. 169, PageID.830).

The defendants misunderstand the law. The evidence related to the defendants' prescribing is not other bad acts evidence, instead the evidence is intrinsic to the offence charged and therefore Rule 404(b) is not implicated. Where the challenged evidence is "intrinsic" to or "inextricably intertwined" with evidence of the crime charged, Rule 404(b) is not applicable. *See United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010); *United States v. Gonzalez*, 501 F.3d 630, 638-39 (6th Cir. 2007); *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (approving the admission of res gestae or background evidence when the uncharged conduct is inextricably intertwined with the charged offense).  The exception recognizes evidence that explains the "background" circumstances that led to the commission of the offenses charged. *See United States v. Olds*, 309 Fed. App'x 967, 974 (6th Cir. 2009). A jury is entitled to know the "setting" of a case

9

and cannot be expected to make its decision in a void, without knowledge of the time, place, and circumstances of the charge. *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977); *United States v. Weinstock*, 153 F.3d 272, 277-78 (6th Cir. 1998).

Intrinsic acts have a causal, temporal, or spatial connection with the charged offenses. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Intrinsic acts include "evidence [that] is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995); *United Staes v. Hubbard*, 2017 WL 1503996 *8 (E.D. Ky. April 26, 2017) (unpublished). In *Hubbard*, the court found the evidence at issue "was intrinsic because of the close temporal, spatial, and causal link" between it and the offenses charged and was not subject to Rule 404(b). *Id.*

As in *Hubbard,* the prescription activity for the time period alleged in the first superseding indictment is intrinsic because of the close temporal, spatial and causal link between it and the offenses charged. *See also United States v. Wells*, 211 F.3d 988, 999–1000 (6th Cir. 2000) (no error in admitting 171 prescriptions that were not charged in the indictment, since it was evidence of acts in furtherance

of a charged offense). The evidence the defendants seek to exclude in this case establishes when and how the prescriptions were issued by the defendants and demonstrates their prescribing pattern and therefore is not subject to Rule 404(b). Since the additional prescriptions in this case are part of a continuing pattern of illegal activity, they are also part of the res gestae of the charged offenses.

### C. Evidence of the defendants' prescribing practices is not substantially more prejudicial than probative.

 Federal Rule of Evidence 403 provides that relevant evidence may be excluded only if the probative value is "substantially" outweighed by the danger of unfair prejudice. The trial court has "broad discretion" in balancing probative value against unfair prejudice. *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). The prejudice to be weighed is unfair prejudice; evidence that is prejudicial only in that it paints the defendant in a bad light is not unfairly prejudicial. Under a Rule 403 analysis, unless the danger of unfair prejudice substantially outweighs the probative value, the evidence is admissible. *United States v. Hans*, 684 F.2d 343, 346 (6th Cir. 1982). Here, as laid out above, the probative value of the evidence is extremely high.

Evidence that the defendants electronically issued a high volume of controlled substance prescriptions is not unfairly prejudicial. Standing alone, it does not suggest a verdict on a prejudicial or impermissible basis. There is nothing inherently inflammatory about the electronic prescribing data. Only in the

11

context of evidence of particular unlawful prescriptions does the statistical

evidence have incriminating value. Such incriminating evidence is not unfairly

prejudicial at all.

## III. CONCLUSION

For the preceding reasons, the Government respectfully requests that the

Court deny the defendants' motion.

Respectfully Submitted,
DAWN N. ISON
United States Attorney

*s/ Regina R. McCullough*
Regina R. McCullough
Lisandra Fernandez-Silber
Assistant United States Attorneys
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9618
Regina.McCullough@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on Thursday, July 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_s/Regina R. McCullough_
Regina R. McCullough
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9618
Regina.McCullough@usdoj.gov